No. 24-30222

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STEPHEN D. COOK, DOCTOR; IN HIS CAPACITY AS CO-TRUSTEE OF MARSHALL HERITAGE FOUNDATION,

*Plaintiff-Appellee,*

v.

PRESTON L. MARSHALL, IN HIS CAPACITY AS CO-TRUSTEE OF PEROXISOME TRUST,

*Defendant-Appellant.*

STEPHEN D. COOK, DOCTOR; IN HIS CAPACITIES AS CO-TRUSTEE OF THE MARSHALL HERITAGE FOUNDATION AND MARSHALL LEGACY FOUNDATION,

*Plaintiff-Appellee,*

v.

PRESTON L. MARSHALL, BOTH IN HIS CAPACITY AS CO-TRUSTEE OF PEROXISOME TRUST AND IN HIS PERSONAL CAPACITY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
Nos. 2:17-CV-5368, 2:21-CV-2139, Hon. Eldon E. Fallon

## BRIEF FOR APPELLANT PRESTON L. MARSHALL

James M. Garner
Ashley G. Coker
SHER GARNER CAHILL RICHTER
    KLEIN & HILBERT, LLC
909 Poydras Street, 27th Floor
New Orleans, Louisiana 70112
Phone: (504) 299-2100
jgarner@shergarner.com
acoker@shergarner.com

David C. Frederick
Scott K. Attaway
Catherine M. Redlingshafer
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dfrederick@kellogghansen.com
sattaway@kellogghansen.com
credlingshafer@kellogghansen.com

July 10, 2024    *Counsel for Appellant Preston L. Marshall*

**No. 24-30222**

---

STEPHEN D. COOK, DOCTOR; IN HIS CAPACITY AS CO-TRUSTEE OF MARSHALL HERITAGE FOUNDATION,

*Plaintiff-Appellee,*

v.

PRESTON L. MARSHALL, IN HIS CAPACITY AS CO-TRUSTEE OF PEROXISOME TRUST,

*Defendant-Appellant.*

---

STEPHEN D. COOK, DOCTOR; IN HIS CAPACITIES AS CO-TRUSTEE OF THE MARSHALL HERITAGE FOUNDATION AND MARSHALL LEGACY FOUNDATION,

*Plaintiff-Appellee,*

v.

PRESTON L. MARSHALL, BOTH IN HIS OFFICIAL CAPACITY AS CO-TRUSTEE OF PEROXISOME TRUST AND IN HIS PERSONAL CAPACITY,

*Defendant-Appellant.*

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**A.      Plaintiff-Appellee:**

The Plaintiff and Appellee, Dr. Stephen D. Cook, is a Co-Trustee of The Marshall Heritage Foundation. The Marshall Heritage Foundation is a charitable trust organized under the laws of the State of Louisiana. The other Co-Trustees of The Marshall Heritage Foundation are Elaine Marshall and E. Pierce Marshall, Jr.

**B.**     **Attorneys for Plaintiff-Appellee:**

Philip K. Jones, Jr.
Kelly Titus Scalise
Liskow & Lewis, APLC
Suite 5000
701 Poydras Street
New Orleans, LA 70139
(504) 556-4132
pkjones@liskow.com
ktscalise@liskow.com

Michael Reese Davis, Sr.
Hymel Davis & Petersen, L.L.C.
10602 Coursey Boulevard
Baton Rouge, LA 70816
(225) 298-8118
mdavis@hymeldavis.com

**C.**     **Defendant-Appellant:**

The Defendant and Appellant, Preston L. Marshall, is a Co-Trustee of the

Peroxisome Trust. The Peroxisome Trust is a Louisiana Nongrantor Lead Annuity

Trust with two trustees. The other Co-Trustee of the Peroxisome Trust is E. Pierce

Marshall, Jr.

**D. Attorneys for Defendant-Appellant:**

David Charles Frederick
Scott Kelly Attaway
Catherine M. Redlingshafer
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
Suite 400
1615 M Street, N.W.
Washington, DC 20036-3215
(202) 326-7951
dfrederick@kellogghansen.com
sattaway@kellogghansen.com
credlingshafer@kellogghansen.com

James M. Garner, Esq.
Ashley Gremillion Coker
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
28th Floor
909 Poydras Street
New Orleans, LA 70112
(504) 299-2100
jgarner@shergarner.com
acoker@shergarner.com

Daniel A. Kramer
Lundy, L.L.P.
501 Broad Street
Lake Charles, LA 70601
(337) 439-0707
dkramer@lundyllp.com

**E. Other Interested Parties**

Other interested parties include E. Pierce Marshall, Jr., who is a Co-Trustee

of both The Marshall Heritage Foundation and the Peroxisome Trust, and Mrs.

Elaine T. Marshall, who is a Co-Trustee of the Marshall Heritage Foundation, as well the grantor/settlor of the Peroxisome Trust.

_/s/ David C. Frederick_
David C. Frederick
_Counsel for Preston L. Marshall_

## STATEMENT REGARDING ORAL ARGUMENT

In *Cook v. Marshall*, 842 F. App'x 858 (5th Cir. 2020), this Court affirmed a judgment that Defendant-Appellant breached his duty as co-trustee of the "Peroxisome" charitable trust to authorize distributions to the "Heritage" charitable trust. In this second lawsuit, Plaintiff-Appellee brings new claims seeking damages on behalf of Heritage he could have sought originally; relief for a second recipient charitable trust named "Legacy" he could have sought originally; damages for both trusts also available originally; and removal of Defendant as co-trustee of Peroxisome, a remedy sought post-judgment and denied in the first suit. This suit is barred by res judicata because the parties in each case are the same or in privity with each other and the claims are based on the same conduct asserted originally – Defendant's cessation of equal distributions to Heritage and Legacy.

Defendant respectfully submits oral argument would assist the Court in addressing numerous issues including history of the trusts, the privity-based relationships between the parties in each suit, the conduct underlying the claims in each suit, and the governing law to be applied to each set of facts. Defendant also appeals adverse rulings regarding nonjoinder of necessary and indispensable parties that would destroy diversity jurisdiction, and the district court's preclusion of Defendant's ability to present evidence at trial of comparative fault and failure to mitigate damages. Oral argument therefore would be helpful to the Court.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. vi

TABLE OF AUTHORITIES ................................................................................. ix

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................2

INTRODUCTION ..................................................................................................3

STATEMENT OF THE CASE................................................................................5

      A.    *Cook I* (filed May 30, 2017, final judgment February 26, 2019)..........5

      B.    *Cook II* (filed November 18, 2021)....................................................11

SUMMARY OF ARGUMENT ..............................................................................12

GOVERNING LAW AND STANDARD OF REVIEW ........................................15

ARGUMENT .........................................................................................................16

I.    RES JUDICATA BARS THIS SUIT ............................................................16

      A.    Louisiana's Res Judicata Statute Expressly Bars All Claims
          That Existed At Final Judgment In The Previous Lawsuit ................16

      B.    The Parties Are The Same Or Are In Privity (Element 3) ..................18

          1.    Cook as Co-Trustee of Heritage was the Same Plaintiff
               Each Time ...............................................................................18

          2.    Cook as Trustee of Legacy was in Privity with Himself as
               Trustee of Heritage.................................................................19

          3.    For the Damages Claims, Preston in his Personal Capacity
               was in Privity with Himself as Co-Trustee of Peroxisome.......23

4. For the Trustee Removal Claim, Preston as Co-Trustee of Peroxisome was the Same Defendant Each Time ................29

C. All Three *Cook II* Causes Of Action Existed At The Time Of Final Judgment In *Cook I* (Element 4) .................................29

1. The Damages Claims in Counts II and III are Precluded .........29

2. The Trustee Removal Claim in Count I is Precluded ..............39

D. The *Cook I* And *Cook II* Causes Of Action Arose Out Of The Same Transaction (Element 5) ............................................42

II. THIS SUIT SHOULD BE DISMISSED FOR FAILURE TO JOIN PIERCE AND ELAINE AS NECESSARY AND INDISPENSABLE PARTIES .........................................................................44

III. A JURY SHOULD ASSESS COMPARATIVE FAULT AND FAILURE TO MITIGATE DAMAGES ...........................................................48

A. Pierce and Elaine Comparatively Are At Fault ....................48

B. Cook Failed To Mitigate Damages .....................................53

CONCLUSION ..................................................................................56

CERTIFICATE OF SERVICE ............................................................57

CERTIFICATE OF COMPLIANCE ....................................................58

ADDENDUM

# TABLE OF AUTHORITIES

Page

## CASES

*Adams v. Sutton*,
    351 So. 3d 391 (La. App. 2022) .................................................. 19

*Ardis v. Anderson*,
    662 F. App'x 729 (11th Cir. 2016)............................................. 19

*Armbruster v. Anderson*,
    250 So. 3d 310 (La. App. 2018) ....................................... 17, 20, 22

*Armbruster v. Partners, LLC*,
    2018 WL 6069639 (E.D. La. 2018)............................................. 23

*Austin v. Abney Mills*,
    824 So. 2d 1137 (La. 2002) ....................................................... 36

*Austin v. Markey*,
    2 So. 3d 438 (La. App. 2008) .................................................... 19

*Bailey v. Khoury*,
    891 So. 2d 1268 (La. 2005) ....................................................... 35

*Bjorklund v. Trezise*,
    2016 WL 513476 (Mass. Land Ct. 2016)................................... 27

*Bordelon v. Southern Cent. Bell Tel. Co.*,
    617 So. 2d 1337 (La. App. 1993) .............................................. 53

*Brown v. Schreiner*,
    81 So. 3d 705 (La. App. 2011) .................................................. 53

*Cook v. Marshall*,
    842 F. App'x 858 (5th Cir. 2020)................................................ 3

*Crozier v. Venture, Inc.*,
    2014 WL 5679828 (S.D. Miss. 2014) ....................................... 26

*Dean v. Delacroix Corp.*,
106 So. 3d 283 (La. App. 2012) .................................... 19

*Decoulos v. O'Keefe*,
124 N.E.3d 158 (Mass. App. 2019) ............................... 27

*Decoulos v. Town of Aquinnah*,

2018 WL 3553351 (D. Mass. 2018),
*aff'd*, 2019 WL 11234357 (1st Cir. 2019)........................ 27

2017 WL 5907489 (Mass. Land Ct. 2017).................... 27

*Dumas v. Louisiana ex rel. Dep't of Culture, Recreation & Tourism*,
828 So. 2d 530 (La. 2002) ........................................... 52

*Endsley v. City of Macon*,
321 F. App'x 811 (11th Cir. 2008)............................... 19

*Everything on Wheels Subaru v. Subaru S.*,
616 So. 2d 1234 (La. 1993) ........................................ 17

*Fiumara v. Fireman's Fund Insurance*,
746 F.2d 87 (1st Cir. 1984)......................................... 26

*Forum for Equality PAC v. McKeithen*,
893 So. 2d 738 (La. 2005) ............................ 17, 18, 20, 21, 22, 24

*GBForefront, L.P. v. Forefront Mgmt. Grp.*,
888 F.3d 29 (3d Cir. 2018) ......................................... 44

*GE Oil & Gas v. Waguespack*,
523 F. Supp. 3d 926 (W.D. La. 2021) ...................... 45, 47

*Green v. Iberia Par. Sch. Bd.*,
945 So. 2d 940 (La. App. 2006) .................................. 17

*Green v. Louisiana Dep't of Pub. Safety & Corr.*,
2007 WL 9778112 (W.D. La. 2007) .......................... 26

*Haas v. Jefferson Nat'l Bank*,
442 F.2d 394 (5th Cir. 1971) ................................. 45, 46

*Hager v. Brinker Texas*,
    102 F.4th 692 (5th Cir. 2024) ....................................................... 15

*Hall v. Hall*,
    753 F. App'x 96 (3d Cir. 2018) ..................................................... 33

*Halpern v. Jonathan Ferrara Gallery*,
    365 So. 3d 568 (La. App. 2020) ................................................... 47

*Harvey v. Dixie Graphics, Inc.*,
    593 So. 2d 351 (La. 1992) ...................................................... 31, 32

*Harvey v. Grey Wolf Drilling Co.*,
    542 F.3d 1077 (5th Cir. 2008) ...................................................... 44

*Heaton v. Chaisson*,
    280 So. 3d 289 (La. App. 2019) ............................................... 42, 43

*Hendrick v. ABC Insurance*,
    760 So. 2d 650 (La. App. 2000) ................................................... 49

*Henkelmann v. Whiskey Island Preserve*,
    145 So. 3d 465 (La. App. 2014) ............................................... 39, 40

*Hogg v. Chevron USA, Inc.*,
    45 So. 3d 991 (La. 2010) ............................................................ 34

*Howe, In re*,
    913 F.2d 1138 (5th Cir. 1990) ............................................... 37, 38

*Howell Hydrocarbons v. Adams*,
    897 F.2d 183 (5th Cir. 1990) ...................................................... 28

*Intelogic Trace, Inc., In re*,
    200 F.3d 382 (5th Cir. 2000) ................................................. 37, 42

*Lambert v. Conrad*,
    536 F.2d 1183 (7th Cir. 1976) ...................................................... 26

*Latham v. Wells Fargo Bank*,
    896 F.2d 979 (5th Cir. 1990) ...................................................... 20

*Lober v. Moore*,
  417 F.2d 714 (D.C. Cir. 1969)...................................................... 26

*Louisiana ex rel. Guilbeau v. BEPCO, L.P.*,
  341 So. 3d 1 (La. App. 2021) ...................................................... 18

*Lowe v. Rivers*,
  445 So. 2d 105 (La. App. 1984) .................................................. 19

*Lubrizol Corp. v. Exxon Corp.*,
  871 F.2d 1279 (5th Cir. 1989) .................................................... 25

*Mandarino v. Pollard*,
  718 F.2d 845 (7th Cir. 1983) ...................................................... 26

*Marin v. Exxon Mobil Corp.*,
  48 So. 3d 234 (La. 2010) ...................................................... 35, 36

*Mason v. Auto Club Fam. Insurance*,
  2010 WL 4924766 (E.D. La. 2010).............................................. 43

*MB Indus., LLC v. CNA Insurance*,
  74 So. 3d 1173 (La. 2011) .......................................................... 55

*Meador v. Apple, Inc.*,
  911 F.3d 260 (5th Cir. 2018) ...................................................... 15

*Merlin v. Fuselier Constr. Inc.*,
  789 So. 2d 710 (La. App. 2001) .................................................. 53

*Momenian v. Davidson*,
  878 F.3d 381 (D.C. Cir. 2017)..................................................... 44

*Mueller's Tr., In re*,
  135 N.W.2d 854 (Wis. 1965) ................................................. 51, 55

*National Benevolent Ass'n, In re*,
  333 F. App'x 822 (5th Cir. 2009).................................................. 27

*Neal v. Old Republic Inurance*,
  2020 WL 9720239 (W.D. La. 2020), *report and recommendation adopted*, 2020 WL 1164817 (W.D. La. 2020) ............................. 47

*New York Life Insurance v. Deshotel*,
    142 F.3d 873 (5th Cir. 1998) ....................................................... 31

*North Am. Treatment Sys. v. Scottsdale Insurance*,
    943 So. 2d 429 (La. App. 2006) ................................................. 42

*Oakes v. Countrywide Home Loans*,
    2012 WL 2327920 (E.D. La. 2012) ............................................. 32

*Paige, In re*,
    610 F.3d 865 (5th Cir. 2010); ............................................. 27, 37

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ............................................. 44, 45

*Raymond Loubier Irrevocable Tr. v. Loubier*,
    858 F.3d 719 (2d Cir. 2017) ........................................................ 44

*Reed v. Louisiana Horticulture Comm'n*,
    341 So. 3d 66 (La. App. 2021) ................................................... 35

*Rondeno v. Law Office*,
    111 So. 3d 515 (La. App. 2013) ................................................. 54

*Russell v. SunAmerica Securities*,
    962 F.2d 1169 (5th Cir. 1992) ................... 20, 21, 23, 24, 25, 26, 27

*Sacks v. Texas S. Univ.*,
    83 F.4th 340 (5th Cir. 2023) ...................................................... 26

*Shiell v. Jones*,
2020 WL 2331637 (E.D. La. 2020),
*aff'd on other grounds*, 2022 WL 489339 (5th Cir. 2022) ........................ 26

*Smyth, In re*,
    273 F.3d 393 (5th Cir. 2001), 2001 WL 1013183 ................... 26, 27

*Southmark Properties v. Charles House Corp.*,
    742 F.2d 862 (5th Cir. 1984) ..................................................... 38

*Southwest Airlines v. Texas Int'l Airlines*,
    546 F.2d 84 (5th Cir. 1977) ....................................................... 20

*Spector v. El Ranco, Inc.*,
  263 F.2d 143 (9th Cir. 1959) ........................................................ 26

*Succession of Dunham, In re*,
  408 So. 2d 888 (La. 1981) ...................................................... 51, 54

*T.A. Charlot, LLC v. Transportation Consultants*,
  2022 WL 2132314 (E.D. La. 2022) ............................................. 23

*Terrebonne Fuel v. Placid Refining*,
  666 So. 2d 624 (La. 1996) ....................................... 3, 4, 16, 17, 21

*Tisdale v. Hedrick*,
  359 So. 3d 484 (La. 2023) ............................................................ 52

*TMF Hotel Properties v. Crescent City Connections*,
  318 So. 3d 756 (La. App. 2018) ................................................... 23

*Ward v. Vizzini*,
  695 So. 2d 1012 (La. App. 1997) ................................................. 53

*Welch v. Crown Zellerbach Corp.*,
  359 So. 2d 154 (La. 1978) ............................................................ 18

## STATUTES

26 U.S.C. § 6651 ................................................................................ 33

La. Civ. Code:

  art. 2002 ................................................................................ 53, 55

  art. 2323 ................................................................... 47, 49, 52, 53

  art. 2324 ....................................................................................... 49

  art. 3492 ................................................................................ 32, 35

La. Code Civ. Proc. art. 425 ............................................................ 17

La. Rev. Stat.:

 § 9:2091 ........................................................................ 54

 § 9:2201(1) ..................................................................... 24

 § 9:2205(5) ..................................................... 46, 51, 52, 55

 § 9:2114 ........................................................................ 51

 § 9:2221 ........................................................................ 39

 § 9:5604(A)-(B) ............................................................. 35

 § 9:5605(A) ................................................................... 35

 § 9:5606 ........................................................................ 35

 § 9:5628 ........................................................................ 35

 § 13:4231 ................................................ 3, 12, 16, 17, 42, 43

## RULES

Fed. R. App. P. 4(a)(4)(A)(iv) ................................................. 1

Fed. R. Civ. P.:

 Rule 12(b)(7) ................................................................ 44

 Rule 19 ............................................................. 44, 45, 46, 48

Fifth Circuit Rule 47.5.4 ....................................................... 27

## OTHER AUTHORITIES

18 Wright & Miller, *Federal Practice and Procedure* (3d ed.) ............................. 20

Br. of Appellant, *Dodson v. Huff*, No. 00-50842,
2000 WL 34030810 (5th Cir. 2000) ........................................... 37

Restatement (Second) of Judgments (1982) ......................................... 42

# JURISDICTIONAL STATEMENT

In the second appellate issue, Defendant-Appellant Preston L. Marshall ("Preston")[1] contests diversity jurisdiction based on nonjoinder of indispensable parties whose presence would destroy complete diversity.

The district court entered a judgment awarding damages on January 17, 2024, and a judgment ordering removal of Preston as a trustee on January 23, 2024. ROA.8585; ROA.8586. Preston timely moved for reconsideration of the damages judgment on February 9, 2024, which the court granted in part on March 7, 2024. ROA.8587-8596; ROA.8739-8744. On April 4, 2024, the court entered an amended damages judgment. ROA.8745; *see* ROA.8585; ROA.8586; ROA.8908.

Preston timely filed a notice of appeal on April 5, 2024. ROA.8746; *see* Fed. R. App. P. 4(a)(4)(A)(iv). On April 8, 2024, the court entered an amended damages judgment, ROA.8908; *see* ROA.8585, and Preston filed an amended notice of appeal. ROA.8908.

---

[1] This brief refers to the various Marshall family members by their first names for clarity.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**1.** Whether the district court erred in denying Preston's motion to dismiss Cook's claims for damages and removal of Preston as trustee based on res judicata.

**2.** Whether the district court erred in denying Preston's motion to dismiss based on Cook's failure to join necessary and indispensable parties whose presence would destroy diversity jurisdiction.

**3.** If *Cook II* is not dismissed, then whether the district court erred in precluding Preston's comparative fault and damages mitigation evidence at trial and granting summary judgment for Cook on damages.

**INTRODUCTION**

This case is barred by res judicata. Litigation "must end at some point," and the longstanding "purpose of both federal and state law on res judicata is . . . to promote judicial efficiency and final resolution of disputes by preventing needless relitigation." *Terrebonne Fuel v. Placid Refining*, 666 So. 2d 624, 631 (La. 1996). This lawsuit flouts that ancient doctrine, a tactic the Court should reject by reversing the erroneous decision below.

The first time these parties were before this Court, this Court held Defendant Preston L. Marshall ("Preston") breached his duty as a co-trustee by ceasing regular distributions from the "Peroxisome" trust to the "Heritage" trust. *See Cook v. Marshall*, 842 F. App'x 858 (5th Cir. 2020) (ROA.2354-2364). In that case, Plaintiff Dr. Stephen Cook ("Cook") sought *only* an order requiring Preston to authorize the ceased distributions to Heritage, relief the district court granted, this Court affirmed, and Preston followed.

In Louisiana, all claims arising out the same "transaction or occurrence" and "existing at the time of final judgment" in the first case must be brought then – not held back for a subsequent claim-splitting lawsuit. La. R.S. § 13:4231(1). In his first complaint and summary-judgment motion, Cook made allegations for three claims he withheld but now seeks to litigate in this second suit: (1) Preston's cessation of distributions harmed a second trust named "Legacy" equally, since

Peroxisome was required but had ceased to distribute equal amounts to both Heritage and Legacy; (2) Preston's cessation already had caused millions of dollars in damages to both Heritage and Legacy; and (3) Preston's conduct warranted his removal as a trustee of Peroxisome.

Those claims existed before Cook even filed his first suit, and certainly by final judgment, as shown by Cook's own pleadings discussing the basis for them. Yet Cook never sought to amend his first complaint to seek (1) relief for Legacy, (2) damages from Preston, or (3) removal of Preston as co-trustee of Peroxisome. Indeed, his first complaint specifically *disclaimed* any damages remedy.

This Court should reverse the district court's erroneous grant of those three claims in this second suit as barred by res judicata. They are based on the same conduct as the claims in the first suit – Preston's cessation of distributions from Peroxisome. "Precluding relitigation prevents inefficient use of the courts' resources, reduces the possibility of harassment through vexatious suits, and helps maintain respect for the judicial process by guarding against inconsistent decisions." *Terrebonne*, 666 So. 2d at 631. Res judicata therefore precludes Cook's relitigation attempt.

If the Court does not dismiss for res judicata, it should dismiss for nonjoinder. Cook strategically elected to exclude E. Pierce Marshall ("Pierce," Preston's brother), and Elaine Marshall ("Elaine," Pierce and Preston's mother),

4

who are necessary and indispensable parties and critical to the resolution of Cook's claims and Preston's defenses, and whose presence would destroy diversity jurisdiction. Their absence has prejudiced Preston's ability to develop his defense and may result in prejudice in future litigation.

If the Court does not dismiss, it should remand for Preston to present evidence at trial of comparative fault by Pierce and Elaine, and failure to mitigate damages by Cook. They contributed to the damages and a jury reasonably may find their conduct eliminates or reduces damages recoverable from Preston.

## STATEMENT OF THE CASE

Cook filed duplicative lawsuits against Preston claiming he refused to authorize distributions from Peroxisome to the Heritage and Legacy trusts.

### A. *Cook I* (filed May 30, 2017, final judgment February 26, 2019)

**1.** *Peroxisome.* As this Court recounted in *Cook I*, the "Marshall family inherited a significant amount of wealth from the late oil tycoon J. Howard Marshall." ROA.2355. In 2011, "Elaine created the Peroxisome Trust (Peroxisome) as a vehicle to donate $100 million to the Marshall Heritage Foundation," designating her sons Pierce and Preston as sole co-trustees. ROA.2355; ROA.47-48 (¶¶ 10, 14), *see* ROA.56-59 (Peroxisome is a "nongrantor charitable lead annuity trust"). The brothers had "significant disagreements," so "the trustees of the Marshall Heritage Foundation and Peroxisome planned to split

5

each trust in two" pursuant to a Louisiana state-court order authorizing those splits upon a majority trustee vote. ROA.2355. "Under this plan, each half of Peroxisome would fund half of the split Marshall Heritage Foundation." ROA.2355.

*Heritage & Legacy.*  In 2014, the original Marshall Heritage Foundation was split into two trusts, "the Marshall Legacy Foundation" ("Legacy") and "The Marshall Heritage Foundation" ("Heritage"), each "receiv[ing] half of the assets and obligations of the original Marshall Heritage Foundation." ROA.2355-2356.

Without explaining his actions, however, Pierce "blocked Peroxisome from similarly splitting." ROA.2356. When Elaine petitioned a Louisiana court for permission to split Peroxisome, she asserted she (as the donor of Peroxisome) and Pierce and Preston (as its sole co-trustees) "would like to transfer the entire corpus" of Peroxisome to two separate trusts" so each brother could operate "independently from one another," ROA.7347-7348, and that Pierce and Preston each "ha[d] provided a written acceptance of the division," ROA.7367. In 2013, the court ordered "the Peroxisome Trust is divided equally" into two separate trusts "upon execution and agreement of same by a majority of the Trustees." ROA.7370. Yet for the following decade Pierce has refused to split Peroxisome.

From April 2014 through June 2016, Pierce and Preston approved equal distributions to Heritage and Legacy. ROA.2356. Preston subsequently ceased

authorizing those distributions since he reasonably believed "the payments were no longer required because the original Marshall Heritage Foundation no longer exists." ROA.2356. The Louisiana court had authorized Peroxisome to be split but the Peroxisome indenture had not been amended to change beneficiaries after Pierce had blocked that trust's division. Preston was concerned payments to Heritage and Legacy risked tax liability to Peroxisome. ROA.7142; ROA.7151.

Cook asserts[2] he is co-trustee of Heritage and Legacy. ROA.2355; ROA.47 (¶ 8); *see* ROA.9539 (¶ 1); ROA.9565. Those trusts each had three purported trustees. For Heritage: Cook, Elaine, and *Pierce*; and for Legacy: Cook, Elaine, and *Preston*. ROA.1085; ROA.1096. Designating Pierce for Heritage and Preston for Legacy facilitated splitting original Marshall Heritage so each brother could manage charitable grants "independently." ROA.7348.

**2.** In May 2017, Cook as co-trustee of Heritage sued Preston as co-trustee of Peroxisome. ROA.45-52. Cook and Elaine signed Heritage's authorization to sue. ROA.53-55. Cook did not sue on behalf of Legacy though his complaint alleged Preston had ceased equal distributions to Legacy and Heritage; Cook was co-trustee of each trust; and Preston's cessation caused equal harm to both trusts because Peroxisome had to distribute to them "equally." ROA.47 (¶¶ 12-13).

---

[2] This is a disputed issue in pending state-court litigation.

Cook's first complaint in May 2017 alleged the ceased distributions had "resulted in a shortfall in excess of $1,600,000.00" to each trust.  ROA.48 (¶ 15); *see also* ROA.48 (¶ 18).  He alleged Heritage would "not have sufficient funds to meet its [$1 million] obligation to Tulane University" due June 2017.  ROA.49 (¶ 21).  Cook alleged Peroxisome "is subject to taxation" due to Preston's cessation so "the funds available to the beneficiaries of Peroxisome Trust in the future would be reduced, as money required to make tax payments would not be available to make future distributions to beneficiaries."  ROA.50 (¶ 24).

However, Cook "specifically disclaim[ed] any right to, or claim for, costs, attorneys' fees or other such monetary award."  ROA.51 (¶ 29).  He thus sought only an order requiring Preston "to effect past unpaid distributions from [t]he Peroxisome Trust to [Heritage]," but not to Legacy.  ROA.51.

**3.**  In April 2018, at summary judgment Cook asserted Preston's cessation had caused additional economic harm.  He contended "Preston breached [his fiduciary] duty, *causing damage* to [Heritage]."  ROA.1052; *see also* ROA.1054 ("Preston . . . committed a breach of trust, *causing damage* to [Heritage].");  ROA.1056 ("Preston's refusal to perform his duties has *caused damage* to [Heritage].)" (all three emphases added).

Cook asserted Peroxisome "owed [Heritage] $3,323,563.00 as of September 18, 2017," ROA.1050, and "Preston has affirmatively compromised [Heritage's]

financial wellbeing," ROA.1056.  He alleged this warranted "removal of [Preston as] the Trustee."  ROA.1057.

Nevertheless, Cook sought neither damages against Preston personally nor his removal as co-trustee of Peroxisome.  Cook also mentioned Legacy 33 times in his summary-judgment motion and alleged Preston's actions likewise harmed Legacy because "the Peroxisome Trust ceased making payments to [Heritage] and [Legacy] in June 2016."  ROA.1049.  But he never sought to amend his complaint to seek relief for Legacy, contending it "is not involved in this suit."  ROA.1048.

**4.**  On February 25, 2019, the district court "ruled in Cook's favor, ordered Preston to authorize payments from Peroxisome to [Heritage], and held Preston had breached his fiduciary duties."  ROA.2356; *see* ROA.1847-1859.  The next day the court issued its final judgment, which stated:  "In the event Preston refuses to comply with the judgment of the Court, . . . Cook requests that the Court, in accordance with Rule 70 of the Federal Rules of Civil Procedure, authorize a third party (*e.g.*, Clerk of Court) to execute the necessary documents to effect the distribution."  ROA.1860.

On March 11, 2019, Cook sought approval for the court clerk to execute the Peroxisome distributions.  ROA.1861-1865.  The next day, Preston appealed the judgment to this Court and sought a stay pending appeal from the district court.  ROA.1883-1884; *see* ROA.1885-1904.  On June 10, 2019, the district court stayed

9

its judgment, reasoning the "appeal raises a significant legal question" concerning "unsettled questions of Louisiana trust law" and "Preston 'presents a substantial case in support' of his position." ROA.1950-1951. The court denied Cook's motion for court-clerk authorizations because it could trigger "tax consequences [for Peroxisome] of compliance with the judgment should it be modified or reversed on appeal." ROA.1952.

On November 20, 2019, the court lifted its stay after the IRS assessed taxes and penalties on Peroxisome for the ceased distributions. ROA.2234. On December 31, 2020, this Court resolved the appeal in Cook's favor, affirming the district court's holding Preston was required to authorize distributions from Peroxisome to Heritage. ROA.2354-2364.

**5.** Cook did not further pursue his motion for court-clerk authorizations after the stay was lifted, either before or after this Court resolved the appeal in *Cook I.* Instead, in February 2021, Cook moved to enforce the judgment and sought the *new* relief of removal of Preston as co-trustee of Peroxisome. ROA.2249-2273. Preston objected, *inter alia*, because Cook had never sought trustee removal before final judgment. *See* ROA.2473-2474.

The court declined to remove Preston as co-trustee of Peroxisome, noting he had "approved some wire transfers to Peroxisome beneficiaries and indicated that he 'remains willing' to authorize future wire transfers to the beneficiaries in

accordance with the Court's Judgment." ROA.2633. But it held Preston in contempt and ordered him by April 15, 2021, to authorize Pierce "to contact the IRS and attempt to negotiate an appropriate resolution of the Peroxisome's tax liability" and "make the appropriate payments to Peroxisome's beneficiaries." ROA.2634-2635. Preston timely provided those authorizations, purging his contempt. ROA.2635-2636.

## B.    *Cook II* (filed November 18, 2021)

**1.** In November 2021, Cook sued Preston again for the same economic harm and conduct. This time, Cook sued not only as co-trustee of Heritage but also of Legacy. ROA.9539-9556. He sued Preston not only as co-trustee of Peroxisome but also personally. ROA.9540 (¶ 6). Cook sought removal of Preston as trustee (Count I) and recovery from Preston personally of damages to Heritage (Count II) and Legacy (Count III). ROA.9552-9558 (¶¶ 51-73).

As in *Cook I*, Cook alleged Preston's cessation had caused distribution shortfalls to Heritage and Legacy plus tax liabilities for Peroxisome that in turn reduced funds to Heritage and Legacy. ROA.9550-9552 (¶¶ 42-50). Cook alleged Peroxisome had made distributions to Heritage and Legacy from April 2014 through June 2016; Preston thereafter ceased authorizing them; Peroxisome "did not distribute the funds it was obligated to distribute to [Heritage] and [Legacy]";

and this "caused [Heritage] to be severely delinquent in its charitable obligations" including to "Tulane University." ROA.9545-9546 (¶¶ 23-26).

Legacy's authorization for Cook to sue was signed by Cook and Elaine as co-trustees of Legacy – just like the *Cook I* Heritage authorization. *See* ROA.53-55. The *Cook II* complaint acknowledged *Cook I* had not sought damages, only "a declaration that Preston's failure to authorize the distributions to [Heritage] was a breach of trust." ROA.9546 (¶ 28).

**2.** On a Rule 12(b)(6) motion, the district court rejected Preston's defenses including res judicata and failure to join a necessary party. ROA.3604-3616.

At summary judgment, the district court ordered Preston removed as trustee of Peroxisome. ROA.8039-8050; ROA.8586 (judgment). It awarded damages of $10,631,856.30 against Preston personally for 2017, 2018, and 2019. ROA.8579-8584; ROA.8585 (judgment). On reconsideration, the court provided that if the IRS refunds certain Peroxisome tax penalties then Preston's "liability in relation to said issue is reduced accordingly." ROA.8908 (amended judgment).

## SUMMARY OF ARGUMENT

**I.A.** Louisiana's res judicata statute tracks federal law and bars "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the [first] litigation." La. R.S. § 13:4231(1).

12

The *Cook II* claims existed when Cook filed his complaint in *Cook I* – and certainly by final judgment – so they are barred by res judicata.

The parties agreed and the district court held the *Cook I* judgment was valid and final. Preston satisfies the remaining three elements of res judicata because the *Cook II* parties are the same as or in privity with those in *Cook I*; the *Cook II* claims existed before final judgment in *Cook I*; and they arose from the same transaction or occurrence as the *Cook I* claims.

**I.B.** The *Cook II* parties are the same as or in privity with the *Cook I* parties.

In both lawsuits, Cook sued as co-trustee of Heritage and was the same plaintiff each time.

For claims regarding Legacy – which Cook omitted in *Cook I* – Cook as co-trustee of Legacy was in privity with himself as co-trustee of Heritage in *Cook I*. He controlled the *Cook I* litigation which alone is sufficient to show privity. Cook also had every incentive to represent Legacy's interests in *Cook I* because he alleged the Peroxisome non-distributions damaged both Heritage and Legacy, which likewise is sufficient for privity.

For damages claims against Preston personally – which Cook specifically disclaimed in *Cook I* – Preston was in privity with himself as co-trustee of Heritage and Legacy. Numerous decisions have held relationships based on vicarious liability including principal-and-agent or employer-and-employee are in privity

with each other.  Preston potentially was vicariously liable personally for his conduct as co-trustee of Heritage and Legacy, and the weight of case law warrants a privity finding here.

For claims regarding removal of Preston as a trustee, Preston was sued in his capacity as co-trustee of Peroxisome and was the same trustee defendant each time.

**I.C.**  The claims existed at the time Cook filed *Cook I*, and certainly by final judgment.  Indeed, Cook asserted in *Cook I* that Preston's cessation of equal Peroxisome distributions *already* had caused millions of dollars in damages equally to both Heritage and Legacy.  Louisiana law provides that claims exist or accrue when some damage is suffered, even if the amount is not yet known and additional damages later may occur.

**I.D.**  Similarly, the claims in each case are based on the same transaction or occurrence – Preston's conduct in ceasing Peroxisome distributions equally to Heritage and Legacy.  Because Cook failed to seek damages or Preston's removal as co-trustee of Peroxisome in *Cook I* based on that same conduct, res judicata bars those claims here.

**II.**  Cook sought to avoid dismissal for lack of diversity jurisdiction by not joining his co-trustees Pierce and Elaine who are necessary and indispensable parties and critical to the resolution of Cook's claims and Preston's defenses.

Their absence has prejudiced Preston's ability to develop his defense and may result in prejudice in future litigations.

**III.** If the Court does not dismiss based on res judicata or nonjoinder, it should remand for Preston to present evidence at trial of comparative fault because Pierce consistently refused to effectuate the court-authorized split of Peroxisome which would have avoided Peroxisome's tax consequences. Pierce and Elaine are comparatively at fault for failing to urge Preston to make distributions; indeed, Pierce testified he never discussed with Preston why Preston ceased distributions. Cook likewise failed to mitigate damages by failing to persuade Pierce to complete the split of Peroxisome, to seek damages in *Cook I*, or to seek any relief on behalf of Legacy until *Cook II*.

## GOVERNING LAW AND STANDARD OF REVIEW

As a case brought asserting "diversity jurisdiction," the Court should "apply the substantive law of Louisiana." ROA.2356-2357.

This Court reviews "the grant of a motion to dismiss . . . de novo, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs.' " *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018).

This Court similarly "review[s] a grant of summary judgment de novo" and "must view the evidence in the light most favorable to the nonmoving party." *Hager v. Brinker Texas*, 102 F.4th 692, 697 (5th Cir. 2024).

**ARGUMENT**

## I.  RES JUDICATA BARS THIS SUIT

Res judicata "serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence." *Terrebonne Fuel v. Placid Refining*, 666 So. 2d 624, 632 (La. 1996) (quoting La. R.S. § 13:4231 cmt. (a)).  Litigation "must end at some point," so "[p]recluding relitigation prevents inefficient use of the courts' resources, reduces the possibility of harassment through vexatious suits, and helps maintain respect for the judicial process by guarding against inconsistent decisions." *Id.* at 631.

### A.  Louisiana's Res Judicata Statute Expressly Bars All Claims That Existed At Final Judgment In The Previous Lawsuit

Louisiana's "[r]es judicata" statute provides that "a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent":  "If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment."  La. R.S. § 13:4231(1).[3]

---

[3] *See also id.* cmt. e ("Claims that arise or which [plaintiff] becomes aware of before trial, may be asserted through an amended or supplemental petition, and these claims will relate back to the time of the original filing if they arise out of the transaction or occurrence set forth in the original petition.").

16

Therefore, "all actions arising out of the same transaction or occurrence must be brought together or be subject to a plea of res judicata." *Everything on Wheels Subaru v. Subaru S.*, 616 So. 2d 1234, 1238 (La. 1993); *see also* La. Code Civ. Proc. art. 425 (requiring party to "assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation"). Since § 13:4231 was enacted in 1991, "res judicata under Louisiana law [is] akin to federal law." *Armbruster v. Anderson*, 250 So. 3d 310, 316 & n.13 (La. App. 2018).[4] Louisiana courts "have repeatedly confirmed that federal law is applicable to consideration of whether a federal court judgment has res judicata effect." *Green v. Iberia Par. Sch. Bd.*, 945 So. 2d 940, 943 (La. App. 2006).

A defendant must satisfy five elements for a second action to be precluded by res judicata: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Forum for Equality PAC v. McKeithen*, 893 So. 2d 738, 745 (La. 2005) (citing § 13:4231).

---

[4] Before 1991, "Louisiana law on res judicata was substantially narrower," focusing on "whether the second action is based on the same cause or cause of action (a concept which is difficult to define)." *Terrebonne*, 666 So. 2d at 631-32.

The district court properly found the first two elements satisfied because the "parties agree[d] that the judgment in *Cook I* was both final and valid." ROA.3608; *see* ROA.3152. Preston also satisfies the remaining three elements.

## B. The Parties Are The Same Or Are In Privity (Element 3)

Identity of parties exists "whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties." *Forum for Equality*, 893 So. 2d at 745 (quoting *Welch v. Crown Zellerbach Corp.*, 359 So. 2d 154, 156 (La. 1978)). "A person has the same quality when he . . . appears in the same capacity in both suits, or when he . . . is in privy to a party in the prior suit." *Louisiana ex rel. Guilbeau v. BEPCO, L.P.*, 341 So. 3d 1, 9 (La. App. 2021).

### 1. Cook as Co-Trustee of Heritage was the Same Plaintiff Each Time

In *Cook I* and *II*, Cook sued as co-trustee of Heritage to challenge Preston's actions that affected Heritage. *See* ROA.45; ROA.47 (¶ 8). Cook was the same plaintiff each time and he pursued the same interests to remedy economic harms to Heritage caused by Preston's cessation of Peroxisome authorizations.

Although the district court acknowledged "in both suits, . . . Cook appeared in his capacity as a co-trustee of [Heritage]," it found "the parties are not the same" because they *also* "appear in different capacities in the second suit" (meaning Cook as trustee of Legacy, and Preston in his personal capacity). ROA.3609. The court erred because it is well-established that a party cannot "defeat [the] exception

of res judicata by the naming of additional defendants" or plaintiffs. *Austin v. Markey*, 2 So. 3d 438, 441 (La. App. 2008); *see also Lowe v. Rivers*, 445 So. 2d 105, 107 (La. App. 1984) (plaintiff "cannot, by merely adding parties, diminish the force and effect of res judicata as between all the parties with whom he has litigated the issues to a final judgment"); *Adams v. Sutton*, 351 So. 3d 391, 403 (La. App. 2022) (naming "additional defendants . . . in the [second] suit . . . does not negate this [sameness] element of res judicata"); *Dean v. Delacroix Corp.*, 106 So. 3d 283, 287 (La. App. 2012) ("[T]he parties are identical.  The fact that [there] was an additional defendant in the [second] case is of no moment.").[5]

Accordingly, for challenges to Preston's cessation of distributions to Heritage, Cook as trustee of Heritage was the same party in each case.

### 2. Cook as Trustee of Legacy was in Privity with Himself as Trustee of Heritage

In *Cook II*, Cook also sued as trustee of Legacy.  Because Cook's role as trustee of Legacy was in privity with Cook's role as trustee of Heritage, the "same party" factor is satisfied.

---

[5] *See also*, *e.g.*, *Ardis v. Anderson*, 662 F. App'x 729, 732 (11th Cir. 2016) ("To the extent plaintiff seeks to avoid the preclusive effects of *res judicata* by naming new defendants in this action, his effort, to put it mildly, is duplicitous and to no avail."); *Endsley v. City of Macon*, 321 F. App'x 811, 814 (11th Cir. 2008) (plaintiff "may not avoid the application of *res judicata* by adding new parties").

**a.** This Court has recognized "the privity label simply expresses a conclusion that preclusion is proper. Modern decisions search directly for circumstances that justify preclusion." *Russell v. SunAmerica Securities*, 962 F.2d 1169, 1173 (5th Cir. 1992) (quoting 18 Wright & Miller, *Federal Practice and Procedure* § 4449 (3d ed.)). Thus, "parties which are *sufficiently related* to merit the application of claim preclusion are in privity." *Id.* at 1174 (emphasis added); *see Southwest Airlines v. Texas Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977) (privity is a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford . . . preclusion").

Louisiana courts also have explained the "same party" element applies to "nonparties who are deemed the 'privies' of the parties" as follows: "(1) the nonparty is the successor in interest of a party; (2) the nonparty controlled the prior litigation; or (3) the nonparty's interests were adequately represented by a party to the action who may be considered the 'virtual representative' of the nonparty because the interests of the party and the nonparty are so closely aligned." *Equality PAC*, 893 So. 2d at 745; *see also Armbruster v.*, 250 So. 3d at 318 (similar) (citing *Latham v. Wells Fargo Bank*, 896 F.2d 979, 983 (5th Cir. 1990)).

Cook meets the second and third instances – he "controlled the prior litigation" and "adequately represented" himself as co-trustee of Legacy, whose interests were "closely aligned" with those of Heritage. *Equality PAC*, 893 So. 2d

at 745. And as co-trustee of both Heritage and Legacy – which were set to receive equal Peroxisome distributions – Cook was "sufficiently related" to himself in those parallel roles. *Russell*, 962 F.2d at 1174.

*Controlled litigation.* As co-trustee of Heritage, Cook was appointed by himself and Elaine to bring suit in *Cook I*, and he thus "controlled the prior litigation." *Equality PAC*, 893 So. 2d at 745. Such control demonstrates Cook's privity with himself as co-trustee of both Heritage and Legacy. Indeed, he alleged in *Cook I* Preston had failed to authorize Peroxisome distributions to Legacy as well as Heritage, noting Peroxisome was required to distribute equally to both trusts so Peroxisome non-distributions would harm Legacy equally. ROA.45-52; ROA 1047-1069; *supra* pp.7-9. Yet despite alleging economic harm to Legacy based on the same conduct by Preston, Cook inexplicably failed in *Cook I* to sue as co-trustee of Legacy. To allow him to bring a follow-on suit would subvert the goal of res judicata to prevent "inefficient use of the courts' resources" and "harassment through vexatious suits." *Terrebonne*, 666 So. 2d at 631.

*Virtual representative.* Cook as co-trustee of Heritage was his own "virtual representative" as co-trustee of Legacy because the interests of both trusts were "closely aligned." *Equality PAC*, 893 So. 2d at 745. Cessation of equal Peroxisome distributions affected both trusts equally. Cook and Elaine were co-trustees of *both* Heritage and Legacy, and together they authorized Cook to bring

*Cook I* on behalf of Heritage (but not Legacy), and for Cook to bring *Cook II* on behalf of *both* Heritage and Legacy. ROA.53-55; ROA.9560-9568; *supra* pp.7, 12. The Court should hold Cook's do-over attempt here is precluded.[6]

**b.** Case law strongly supports a privity finding. In *Equality PAC*, the Louisiana Supreme Court held voters challenging an election were precluded by a previous case brought by *unrelated* voters because they were "closely aligned with the interests of the parties in the [prior] litigation," and "their interests were adequately represented." 893 So. 2d at 745. The case for privity here is stronger because Cook not only controlled *Cook I* but was Legacy's virtual representative as its co-trustee – he was not unrelated to himself like the voters in *Equality PAC.*

In *Armbruster*, the state court held an entity called R&C was in privity with its only members, a married couple, such that a second suit brought by them and other entities they controlled was precluded by a previous bankruptcy adversary proceeding brought by R&C. 250 So. 3d at 319. Because the husband had "controlled the prior litigation," the court held all plaintiffs' "interests were adequately represented" in the adversary proceeding. *Id.* When Armbruster filed a third action in federal court against the same defendants, that court likewise held

---

[6] The third trustees were Pierce for Heritage and Preston for Legacy. ROA.1085; ROA.1096; *supra* p.7. That may be why Cook and Elaine initially chose to exclude Legacy since it was Preston's charitable vehicle, not Pierce's, but it fails to justify a repetitive lawsuit.

he was in privity with R&C, reasoning that as "an entity completely owned and controlled by Armbruster and his wife, R&C had every motivation to advance Armbruster's interests as his 'virtual representative.'" *Armbruster v. Partners, LLC*, 2018 WL 6069639, at *9 (E.D. La. 2018).[7]

Here, Cook likewise had "every motivation" (*id.*) to advance Legacy's interests in *Cook I* because the distribution cessation harmed Heritage and Legacy equally. *Id.* Cook controlled the *Cook I* litigation; he alleged in *Cook I* that harms to *both* trusts were caused by Preston's distribution cessation; Cook and Elaine authorized both *Cook I* and *Cook II*; and as co-trustees they had similar legal duties and trustee incentives to represent each trust equally. The Court should hold Cook was in privity with himself as co-trustee of Heritage and Legacy.

### 3. For the Damages Claims, Preston in his Personal Capacity was in Privity with Himself as Co-Trustee of Peroxisome

Privity analysis is not limited to plaintiffs: "A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant" by being "sufficiently related" to warrant preclusion. *Russell*, 962 F.2d at 1173-74.

---

[7] *See also*, *e.g.*, *T.A. Charlot, LLC v. Transportation Consultants*, 2022 WL 2132314, at *7 (E.D. La. 2022) (finding privity where plaintiff in the first action was "managing member and registered agent" of plaintiff in the second); *TMF Hotel Properties v. Crescent City Connections*, 318 So. 3d 756, 765-66 (La. App. 2018) (finding privity where plaintiff in the first action was manager of the plaintiff company in the second).

**a.** For damages, Preston as co-trustee of Peroxisome is "sufficiently related" to himself personally. In *Cook I*, Cook alleged Preston failed "to effect the quarterly payments by Peroxisome Trust to [Heritage] and [Legacy]." ROA.48 (¶ 18). A trustee may be held personally liable for "loss or depreciation in value of the trust estate resulting from a breach of trust." La. R.S. § 9:2201(1); *see* ROA.9555 (¶ 61) (Cook citing this statute).

Because Preston potentially was liable personally for damages from ceasing distribution, he was "sufficiently related" to himself personally as co-trustee of Peroxisome. Preston also "controlled the prior litigation" for his defense and served as his own "virtual representative" given the potential for personal liability. *Equality PAC*, 893 So. 2d at 745.[8]

Indeed, Cook alleged in *Cook II* that the liability rulings in *Cook I* "are *res judicata* as to Preston [personally] and his liability to [Heritage] and [Legacy]." ROA.9546 (¶ 29). Cook's assertion thus concedes privity because Preston could only be liable personally if he is "sufficiently related" to himself as a Peroxisome co-trustee, given there was no finding in *Cook I* against Preston personally. *Russell*, 962 F.2d at 1174.

---

[8] Preston was especially motivated to defend himself personally because he and Cook have been engaged in contentious litigation for years. *See* ROA.2794 n.1, ROA.2797 nn.11 & 12 (listing three such suits).

**b.** Case law amply supports privity here. In *Lubrizol Corp. v. Exxon Corp.*, this Court found privity and preclusion where the first suit was against Exxon and the second was against Exxon employees. 871 F.2d 1279, 1288-89 (5th Cir. 1989). As this Court observed: "Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued." *Id.* Thus:

> The doctrinal basis for these decisions has varied according to their fidelity to traditional mutuality or privity concepts, but they share a common practical thread. Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief – the courts have denied the plaintiff a second bite at the apple.

*Id.*

In *Russell*, this Court similarly held a successor corporation was in privity with its predecessor – even without assuming predecessor liabilities – because the same employees were transferred to the successor, most officers remained the same, and it retained the same offices. 962 F.2d at 1171, 1176. As in *Lubrizol*, *Russell* relied on the weight of decisions finding relationships such as vicarious

liability, principal and agent, or employer and employee all merited preclusion of a repetitive suit. *Id.* at 1174-75.[9]

Similarly, this Court has found a bankruptcy trustee was in privity with himself as the trust accountant where creditor objections in the first action "were based on the services [the trustee] had rendered to the estate as its accountant," including how he prepared "the estate's tax returns and caused the estate to unnecessarily pay taxes, penalties and interest that were not due." *In re Smyth*, 273

---

[9] The *Russell* Court cited, *inter alia*, the following decisions all finding privity and thus preclusion of a second suit against a sufficiently related defendant: *Spector v. El Ranco, Inc.*, 263 F.2d 143 (9th Cir. 1959) (first suit against hotel employee; second against hotel held precluded); *Mandarino v. Pollard*, 718 F.2d 845 (7th Cir. 1983) (first suit against town; second against mayor and town officials held precluded); *Lambert v. Conrad*, 536 F.2d 1183 (7th Cir. 1976) (first suit against university board; second against university employees held precluded); *Lober v. Moore*, 417 F.2d 714 (D.C. Cir. 1969) (first suit against taxicab company; second against taxi driver held precluded); *Fiumara v. Fireman's Fund Ins. Cos.*, 746 F.2d 87 (1st Cir. 1984) (first suit against insurance company; second against insurance investigators and laboratory held precluded). *See also*, *e.g.*, *Sacks v. Texas S. Univ.*, 83 F.4th 340, 346 (5th Cir. 2023) (first suit against university employer; second against university employee held precluded); *Shiell v. Jones*, 2020 WL 2331637, at *15 (E.D. La. 2020) (first suit against a bank; second against bank employees and outside counsel held precluded), *aff'd on other grounds*, 2022 WL 489339 (5th Cir. 2022); *Green v. Louisiana Dep't of Pub. Safety & Corr.*, 2007 WL 9778112, at *1 (W.D. La. 2007) (first suit against prison healthcare workers; second against co-workers held precluded); *Crozier v. Venture, Inc.*, 2014 WL 5679828, at *5 (S.D. Miss. 2014) (separate defendant companies were in privity because they "worked closely . . . on a handshake basis").

F.3d 393 (5th Cir. 2001), 2001 WL 1013183, at *2 (holding second suit against trustee defendant in his separate capacity as trust accountant precluded).[10]

Other courts properly have held a trustee is in privity with himself. *See Decoulos v. Town of Aquinnah*, 2018 WL 3553351, at *11 (D. Mass. 2018) (finding trustee in privity with himself as an individual), *aff'd*, 2019 WL 11234357 (1st Cir. 2019); *Decoulos v. Town of Aquinnah*, 2017 WL 5907489, at *4 (Mass. Land Ct. 2017) ("plaintiff in his individual capacity, is in privity with himself in his capacity as trustee"), *aff'd sub nom. Decoulos v. O'Keefe*, 124 N.E.3d 158 (Mass. App. 2019); *Bjorklund v. Trezise*, 2016 WL 513476, at *5 (Mass. Land Ct. 2016) (plaintiff "stands in privity with himself as trustee").

**c.** Those principles make sense. An individual personally controls his actions while serving as a trustee, which are even more direct than a principal-and-agent or employer-and-employee relationship. That person is vicariously liable for his actions as trustee, making it proper to require a plaintiff to bring all claims against a trustee in one suit. Preston's "sufficiently related" relationship personally to his role as a trustee fits well within the long history of decisions finding privity and preclusion of a second lawsuit. *Russell*, 962 F.2d at 1174.

---

[10] Although *Smyth* is a post-1996 unpublished decision, *see* Circuit Rule 47.5.4, this Court has cited it as authoritative. *In re Paige*, 610 F.3d 865, 874 (5th Cir. 2010); *In re National Benevolent Ass'n*, 333 F. App'x 822, 827 (5th Cir. 2009).

The *Cook II* allegations are based on the same conduct by Preston as co-trustee in *Cook I* – cessation of Peroxisome distributions. Cook cannot now seek damages when they are based on the same conduct alleged in *Cook I* – where "Cook specifically disclaim[ed] any right to" a "monetary award." ROA.51 (¶ 29).

**d.** In reaching an erroneous contrary result, the district court quoted a decision stating "[r]es judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity." ROA.3609 (quoting *Howell Hydrocarbons v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990)). But *Howell* noted privity could satisfy the "identity of parties test." 897 F.2d at 188. In finding privity lacking there, the Court distinguished *Lubrizol* because the claims "[we]re not premised upon theories" akin to "vicarious liability" and "the bankruptcy court would not have had jurisdiction over the RICO claims" against different defendants in the second suit. *Id.* at 189 & n.1.

Here, *Lubrizol*, *Russell*, and other cases support a finding of privity given the sufficiently close relationship between Preston personally and as co-trustee, and the district court would have had jurisdiction over damages claims in *Cook I*. This Court should hold Preston personally is in privity with himself as co-trustee.[11]

---

[11] Alternatively, because the Court relied solely on the *Cook I* judgment of breach to find Preston personally liable in *Cook II*, if Preston is not personally in privity with himself as trustee there is no liability finding against Preston for breach as he was not named individually in *Cook I*.

### 4. For the Trustee Removal Claim, Preston as Co-Trustee of Peroxisome was the Same Defendant Each Time

For trustee removal, Preston as co-trustee of Peroxisome was the same defendant in both cases. And Cook asserted in his *Cook I* summary-judgment motion that Preston's distribution cessation warranted his removal, showing his awareness a viable claim existed. ROA.1057; *supra* p.9. Cook cannot seek that relief in *Cook II* because he failed to seek it before final judgment in *Cook I*.

### C. All Three *Cook II* Causes Of Action Existed At The Time Of Final Judgment In *Cook I* (Element 4)

When he filed his *Cook I* complaint in May 2017, and certainly before final judgment in February 2019, Cook could have asserted claims (1) for damages against Preston personally and (2) removal of Preston as co-trustee of Peroxisome. He failed to do so and is precluded from asserting them in *Cook II*.

### 1. The Damages Claims in Counts II and III are Precluded

Cook plainly had knowledge of sufficient facts to claim damages in *Cook I* such that his *Cook II* claims existed by then, and certainly by final judgment in *Cook I*. The *Cook I* complaint in May 2017 alleged both present shortfalls in distributions to Heritage and Legacy, and tax consequences to Peroxisome that would further increase those shortfalls:

> 15. Since June 6, 2016, Peroxisome Trust has failed to distribute the quarterly installments due and payable under its instrument to its two beneficiaries: The Marshall Heritage Foundation and the Marshall Legacy Foundation. To date, this has resulted in a shortfall in excess of $1,600,000.00 in the funds available for charitable donations and

good works for which The Marshall Heritage Foundation was created by its settlor. . . .

21. As a result of continuing to meet its legal obligations to fund previously committed donations and the funding shortfall caused by the unlawful refusal of Preston L. Marshall, The Marshall Heritage Foundation will not have sufficient funds to meet its obligation to Tulane University in the amount of one million dollars ($1,000,000.00) due in June 2017. . . .

24. As Peroxisome Trust has failed to meet its distribution requirements under the Internal Revenue Code, *it is subject to taxation*. If subject to taxation, the funds available to the beneficiaries of Peroxisome Trust in the future would be reduced, as money required to make tax payments would not be available to make future distributions to beneficiaries.

ROA.48-50 (emphasis added).

In his April 2018 motion for summary judgment, Cook claimed Preston's cessation had caused damages and Heritage's shortfall had doubled to more than $3.3 million. ROA.1050; *supra* p.8. The same would have been true of Legacy since the ceased Peroxisome distributions were equal for each trust. Cook likewise reiterated that Preston's acts would result in tax penalties. ROA.1047-1070. By the time of final judgment on February 26, 2019, the calendar tax years of 2017 and 2018 were closed and Cook knew Peroxisome was subject to tax liability for 2019 based on the same cessation conduct by Preston.[12] Cook's knowledge of the

---

[12] Peroxisome's "taxable year" was a "calendar year." ROA.57. In *Cook II*, Cook's expert asserted tax consequences only for 2017, 2018, and 2019, which was the basis for the district court's damages award. *See* ROA.3705-3706.

$3.3 million shortfall each to both Heritage and Legacy, plus the likelihood of tax liabilities for Peroxisome that would diminish future distributions to both Heritage and Legacy, was sufficient to assert claims for damages before final judgment.[13]

   **a.** As this Court has explained under longstanding Louisiana law: "Damage to a person's right or legally protected interest is sustained when it has manifested itself with sufficient certainty to be susceptible of proof in a court of justice." *New York Life Insurance v. Deshotel*, 142 F.3d 873, 880 (5th Cir. 1998) (cleaned up). Importantly, "[t]he cause of action arises . . . *before* the plaintiff sustains all or even the greater part of the damage occasioned by the delict," so "[a]*ny actual and appreciable injury* flowing from the defendant's negligence or other wrongful act establishes a cause of action upon which the plaintiff may sue, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the tortious act." *Id.* (citing *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992)) (emphases added).

   According to Cook, damages to Heritage and Legacy did not arise until 2021, "after Pierce was able to negotiate with the IRS and LDR [Louisiana

---

   [13] Even when the IRS assessed taxes months after final judgment, Cook continued to assert "we're not seeking a personal judgment against Preston Marshall for his actions. That may be for another day, but it's not today." ROA.9295. But such strategic withholding of existing claims for a second lawsuit is barred by res judicata.

Department of Revenue] and then pay the taxes, penalties, and interest."

ROA.3154.  Cook misstates the law.  He relied on *Oakes v. Countrywide Home Loans*, 2012 WL 2327920, at \*4-5 (E.D. La. 2012), which applied the claim accrual rules for tort actions pursuant to Article 3492 of the Louisiana Civil Code, which were subject to a one-year period of "prescription" or statute of limitations.

But *Oakes* supports Preston, not Cook.  It quoted a seminal Louisiana Supreme Court case concerning claim accrual for damages based on tax liabilities:

> The damage suffered must at least be actual and appreciable in *quality* – that is, determinable and not merely speculative.  But there is no requirement that the *quantum* of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action.  Thus, in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act.

*Id.* at \*4 (quoting *Harvey*, 593 So. 2d at 354) (emphases added).

*Harvey* held a claim accrued for accounting malpractice based on an erroneous tax return when a business buyer learned of the seller accountant's negligence contemporaneously with learning the IRS disagreed with the return – not years later when the buyer settled the dispute with the IRS and had to pay money.  593 So. 2d at 354-55.  The court held the buyer "also sustained appreciable harm because he had incurred substantial accountant's and attorney's

fees in investigating and informing himself of the deficiencies of the return [the accountant] had prepared." *Id.* at 355.

As the Louisiana Supreme Court reasoned: "The mere fact that all of his damages were not yet suffered because he had not yet written a check to the IRS does not change the key fact that the plaintiff was certainly aware that he had suffered appreciable harm from the allegedly tortious act of [the accountant]." *Id*. It rejected the claim "that some formal proceedings must have been initiated against him by the IRS before prescription can begin to run," squarely disagreeing with the contention that "until formal assessment by the IRS, the plaintiff cannot sue because the extent of damages is unknown or uncertain." *Id.* There was no need "to find a fixed point in time at which damages were deemed to be certain"; rather, "the amount of damages need not be known with certainty" so long as "the fact that some damage would occur was known," and this includes having "to defend against the attack." *Id.*

Similarly, the Third Circuit has held a claim for breach of fiduciary duty is ripe for adjudication when tax consequences likely would follow, not later when "the taxing authority had determined the amount of tax due." *Hall v. Hall*, 753 F. App'x 96, 101 (3d Cir. 2018). The court reasoned "the tax liability was fixed under 26 U.S.C. § 6651 given the fact that income taxes are due annually." *Id.*

Cook's complaint in *Cook I* and his summary-judgment motion asserted shortfalls in distributions from Peroxisome and that tax liabilities for Peroxisome would result from Preston's distribution cessation, further diminishing those distributions. Cook also had to expend funds to investigate the facts and file his complaint against Preston alleging his distribution cessation would cause tax liabilities. Because taxes are due annually, Cook had notice of the tax consequences of Preston's refusal to authorize Peroxisome distributions.

Although *Harvey* concerned a submitted tax return, the trigger point for claim accrual was the business buyer's *discovery* of the accounting negligence. Applying the same discovery standard here, Cook plainly discovered the tax liability upon learning of Preston's refusals to authorize Peroxisome distributions even before filing *Cook I* in 2017. Cook's damages claims accrued then, therefore.

**b.** The Louisiana Supreme Court has applied *Harvey* in myriad situations to find claim accrual at the earliest time a plaintiff knew or should have known damages could follow – not later when damages fully or even substantially materialized. *See*, *e.g.*, *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1001 (La. 2010) (claims accrued when plaintiffs received state-agency letters about soil contamination from gasoline tanks even though they did not specifically say plaintiffs' property was contaminated; it was "beyond peradventure that [the letters] provide[d] sufficient information to excite attention and put plaintiffs on

guard and call for inquiry"); *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 248-51

(La. 2010) (claims accrued when farmer observed sugarcane would not grow

where Exxon had dumped oilfield waste even though Exxon claimed remediation;

explaining plaintiff should have hired an expert because "a plaintiff is responsible

to seek out those whom he believes may be responsible for a specific injury"); *see*

*also*, *e.g.*, *Reed v. Louisiana Horticulture Comm'n*, 341 So. 3d 66, 71 (La. App.

2021) (claims for "*potential damage* from lost income related to [plaintiff's]

suspended license" accrued upon state-agency license denial, not later when

income actually was lost) (emphasis added).

Similarly, certain malpractice claims now are governed by Louisiana statutes

providing such claims accrue on "the date of the alleged act, omission, or neglect"

or "the date of discovery of the alleged act, omission, or neglect" – not the

subsequent date when injury or damage is fully realized.  La. R.S. § 9:5604(A)-(B)

(accounting malpractice), § 9:5605(A) (legal malpractice), § 9:5606 (insurance

malpractice) § 9:5628 (medical malpractice).[14]

---

[14] Louisiana's highest court has held the same principles for claim accrual under
the one-year tort statute of limitations in Article 3492 likewise apply to a medical
malpractice action under § 9:5628.  *Bailey v. Khoury*, 891 So. 2d 1268, 1276 (La.
2005).

Thus, "the question is whether knowledge of the[] facts constitutes the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." *Marin*, 48 So. 3d at 248 (cleaned up).

> Although a *sine qua non* for accrual of a cause of action is damages, Louisiana is generous in its conception of damages, the slightest being sufficient to support an action.. . . While a mere invasion of an interest is insufficient to support a cause of action, an invasion that brings about some degree of loss or detriment and is capable of repair is the type of consequence envisioned . . . . Furthermore, a cause of action may arise before a plaintiff sustains *all* of the damages occasioned by the defendant's negligence.

*Austin v. Abney Mills*, 824 So. 2d 1137, 1148 (La. 2002) (cleaned up).

Plainly, the well-known fact of Preston's Peroxisome distribution cessation led Cook to the conclusion that continued shortfalls in distributions to Heritage and Legacy certainly would follow (as would tax consequences to Peroxisome). Cook was well aware of those issues when bringing his May 2017 *Cook I* complaint and April 2018 *Cook I* summary-judgment motion.

**c.** This Court has applied similar principles to find preclusion. In *Smyth*, a bankruptcy trustee sought to close the estate; creditors objected, alleging the trustee had "caused the estate to pay taxes, penalties[,] and interest which were not due." 2001 WL 1013183, at *1. The Court rejected most of their claims and ordered the estate to be closed, and creditors later sued the trustee for malpractice. *Id.* & n.3. They claimed they "did not yet comprehend" the trustee "may have been negligent or guilty of malpractice," *id.* at *4, because "[a]fter the filing of the

Objection . . . , [the trustee] for the first time delivered copies of tax returns and transcripts" which even then were "not complete," Br. of Appellant at 15-16, *Dodson v. Huff*, No. 00-50842, 2000 WL 34030810 (5th Cir. 2000).

This Court found the second suit precluded because the first proceeding "specifically complained of IRS penalties and interest and overpayment of taxes," so the creditors "had a 'general awareness' of facts that could have supported such claims." *Smyth*, 2001 WL 1013183, at *3-4 (failure to apprehend "significance" of known facts does not excuse failure to bring claim) (citing *In re Howe*, 913 F.2d 1138, 1147 (5th Cir. 1990)); *see Paige*, 610 F.3d at 874 (holding "'general awareness of facts that could have supported' a claim, even if no 'legal conclusions' had been drawn from them, is sufficient" to invoke res judicata) (quoting *Smyth*, 2001 WL 1013183, at *4).

In another case, this Court found accounting malpractice claims precluded where plaintiff knew of "concerns about the quality of professional work"; though plaintiff "may not have been aware of all the precise facts or reached a firm conclusion," it "had sufficient general awareness of the real potential for [malpractice] claims against [the accountant]." *In re Intelogic Trace, Inc.*, 200 F.3d 382, 389 (5th Cir. 2000). In yet another, the Court held lender usury claims precluded because they could have been brought in a prior bankruptcy case in which the same lender asserted a lien despite the plaintiffs' claim they "were not

aware of the significance of [known] facts." *Howe*, 913 F.2d at 1147. In still another, this Court found preclusion where the first suit confirmed a foreclosure sale of the plaintiff's property and the second alleged its construction lender had engaged in improper activities. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870-72 (5th Cir. 1984).

Similarly, Cook knew when he filed *Cook I* and later moved for summary judgment that Preston's cessation was causing shortfalls and tax consequences, which show Cook "had a 'general awareness' of facts that could have supported such claims." *Smyth*, 2001 WL 1013183, at *4. The precise quantum of damages not yet known is irrelevant to claim accrual. *Id.*

**d.** The district court held the *Cook II* claims "largely arise[] from [Preston's] failure to comply with the Court's judgment to authorize payments to [Heritage] and [Legacy] and post-judgment refusals to resolve the Trust's tax liability." ROA.3611. As shown, however, Cook's damages claims accrued well *before* the *Cook I* complaint and summary-judgment motion, and certainly before final judgment – not after. Preston's continuing cessation of Peroxisome distributions while the judgment was on appeal in *Cook I* does not somehow undo the previous accrual of those claims. The *Cook II* damages claims are precluded.

## 2. The Trustee Removal Claim in Count I is Precluded

**a.** Cook likewise knew sufficient facts to seek Preston's removal as trustee in *Cook I*; indeed, his summary-judgment motion asserted removal was justified yet he failed to seek that relief. ROA.1057; *supra* p.9. Likewise, Heritage's authorization for Cook to bring *Cook I* "empowered [Cook] to take all actions necessary and proper, including initiation of litigation . . . , to enforce the provisions of the Louisiana Trust Code and the relevant documents of the Peroxisome Trust and [Heritage]." ROA.54. The *Cook I* complaint cited the statute that allows for trustee removal. ROA.50 (¶ 25) (citing La. R.S. § 9:2221). Cook simply chose not to seek removal and may not do so in *Cook II*.

Cook argued below that res judicata does not apply because Cook could not have sought in *Cook I* to remove Preston based on "Preston's post-Judgment misconduct." ROA.3154-3155. But any alleged additional misconduct does not negate the fact that Cook could have sought Preston's removal in *Cook I* based on similar conduct Cook pleaded and asserted at summary judgment. Indeed, Cook's counsel conceded "he could have prayed for [Preston's removal in *Cook I*], but he didn't." ROA.9334 (Tr. 34:18-19).

Louisiana recognizes the principle a claim that could have been brought in an earlier suit is barred. In *Henkelmann v. Whiskey Island Preserve*, 145 So. 3d 465, 468 (La. App. 2014), plaintiffs sued for rescission of a property purchase,

which the court denied, *id.* at 468-70, and later sued for specific performance to get boathouse facilities built. The court found the second suit barred because the plaintiffs "alleged in their first suit that they believed [the developer] had abandoned plans to build the marina/boathouse, and they could certainly have asserted a cause of action for specific performance at that time." *Id.*

The same applies here. Cook claimed Preston's distribution cessation was a breach of trust and already had caused damages to Heritage and Legacy, so he "could certainly have asserted a cause of action" for removal before final judgment in *Cook I. Id.* Because he failed to do so, the removal claim here is barred.

**b.** After the *Cook I* appeal was resolved, the district court held Preston in contempt for ceasing distributions from Peroxisome but declined to order removal as requested by Cook in his petition to enforce the judgment. *See* ROA.2630-2634; *supra* pp.10-11. Preston maintained, *inter alia*, that seeking such new relief was unlawful in a motion to enforce the February 2019 final judgment because Cook never sought removal *before* final judgment was entered. ROA.2473-2474; *supra* p.10. The court ordered Preston to authorize Pierce "to contact the IRS and attempt to negotiate an appropriate resolution of the Peroxisome's tax liability" and "make the appropriate payments to Peroxisome's beneficiaries." ROA.2634 (capitalization omitted). Preston complied and timely provided those authorizations, purging his contempt. *See* ROA.2635-2636; *supra* p.11.

In *Cook II*, Cook sought removal based on the *same conduct* the district court had assessed in declining to order removal post-judgment in *Cook I*, which the court erroneously granted.

The court explained it held "Preston in contempt until he worked with Pierce to resolve the tax liability issues, *and Preston complied*," ROA.8049 (emphasis added); *see also* ROA.9305 (Tr. 5:2-3) ("[Preston] complied"), thus acknowledging Preston had purged the contempt sanction. It noted "Preston argued that he has breached no additional duties and he has committed no further misconduct between that time and today that would warrant his removal and that the Court should again decline to impose such a remedy." ROA.8049.

Inconsistently, however, the district court said its previous decision post-judgment in *Cook I* not to remove Preston was "to give him one more chance to comply with his duties in the future" but "he squandered that chance." ROA.8049. The court never explained what Preston did to "squander" his chance despite its acknowledgement he had purged his contempt – and it cited no post-contempt-order conduct. ROA.8049; *see also* ROA.3790-3795; ROA.7962-7963 (Cook briefs recounting conduct *before* the court ordered contempt and denied removal).

Accordingly, there was no basis for the district court to reverse course and order removal in *Cook II* based on an unchanged factual record the court should have deemed res judicata. The removal claim should be barred.

41

### D. The *Cook I* And *Cook II* Causes Of Action Arose Out Of The Same Transaction (Element 5)

For the same or similar reasons that the *Cook II* claims existed at the time of final judgment in *Cook I*, *supra* Part.I.C. (element 4), Preston satisfies the final element of res judicata because the claims arose from the same transaction.

"The central inquiry is not whether the second action is based on the same cause or cause of action . . . but whether the second action asserts a cause of action which arises out of the transaction or occurrence *which was the subject matter of the first action*." La. R.S. § 13:4231 cmt. a (emphasis added). Where the "same transaction was the catalyst for the creation of the causes of action in the first and second suit," the fifth element of res judicata is met. *Heaton v. Chaisson*, 280 So. 3d 289, 301 (La. App. 2019).[15]

_____

[15] Under federal law, this Court applies four res judicata elements, the fourth encompassing Louisiana elements four and five – "the same cause of action must be involved in both cases" so they "are based on the same nucleus of operative facts." *Intelogic*, 200 F.3d at 386 (cleaned up). This Court thus "appl[ies] the transactional test of the Restatement (Second) of Judgments [§ 24]," which provides that "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to *all or any part of the transaction, or series of connected transactions*, out of which the action arose." *Id.* at 386 & n.1 (emphasis added). Louisiana's separation of those concepts into elements four and five likely stems from the historical fact that the transactional "same nucleus" test was added to § 13:4231 in 1991, which made Louisiana's res judicata law consistent with federal law. *See supra* p.17; *North Am. Treatment Sys. v. Scottsdale Insurance*, 943 So. 2d 429, 439-40 (La. App. 2006) ("This court has expressly held that the use of a transactional analysis is similarly appropriate in applying our present doctrine of *res judicata.*") (citing Restatement (Second) of Judgments § 24).

The claims in both *Cook I* and *Cook II* rest on the same Peroxisome distribution shortfalls including tax consequences to Peroxisome. *Supra* pp.7-8. Preston's distribution cessation clearly "was the catalyst for the creation of the causes of action in the first and second suit." *Heaton*, 280 So. 3d at 301.

Whether the theories pursued in the second litigation differ from the first is irrelevant where the actions arose out of the same transaction or occurrence. In *Mason v. Auto Club Family Insurance*, 2010 WL 4924766, at *4 (E.D. La. 2010), the plaintiffs alleged in their second suit their insurer "refused to adequately adjust" their claims under the policy for "damages sustained as a result of [hurricane Katrina]." The court held those claims "arise out of the same transaction or occurrence that was the subject matter of [both suits] – namely, the alleged failure of Defendant to pay the amount due under the homeowner's policy for damages sustained by their home as a result of the hurricane." *Id.* That the second suit sought different relief was "inconsequential" because the "[p]laintiffs could and should have pursued all of their theories of recovery in the earlier proceedings." *Id.* (citing La. R.S. § 13:4231 cmt. e).

So too here: Cook "could "could and should have pursued all . . . theories of recovery in the earlier proceeding[]." *Id.* Because he failed to do so, the damages and trustee-removal claims brought in *Cook II* should be barred.

## II. THIS SUIT SHOULD BE DISMISSED FOR FAILURE TO JOIN PIERCE AND ELAINE AS NECESSARY AND INDISPENSABLE PARTIES

The district court erred in denying Preston's motion to dismiss for failure to join Pierce and Elaine as necessary and indispensable parties. ROA.3613-3615. Pierce and Elaine are domiciled in Texas (as is Preston), ROA.2814, so joinder of either as a co-plaintiff would destroy complete diversity. *See Harvey v. Grey Wolf Drilling*, 542 F.3d 1077, 1079 (5th Cir. 2008) ("all persons on one side of the controversy [must] be citizens of different states than all persons on the other side"). The court's failure to consider the citizenship of all Heritage and Legacy trustees allowed them to manipulate jurisdiction by naming only a diverse plaintiff trustee and excluding non-diverse trustees. *See GBForefront, Mgmt. Grp.*, 888 F.3d 29, 34 n.6 (3d Cir. 2018) ("where a traditional trust has multiple trustees, we consider it to have the citizenship of each of its trustees"); *Momenian v. Davidson*, 878 F.3d 381, 389 (D.C. Cir. 2017) ("citizenship of a traditional trust is the citizenship of its trustees"); *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("it is the trustees' citizenship that must determine diversity").

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Rule 19 "provides a two-step analysis for deciding

whether to dismiss an action for failure to join an absent party." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).

First, Rule 19(a) requires joinder where "disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the[ir] interest[s]." Fed. R. Civ. P. 19(a). Joinder likewise is necessary where the absent party's "evidence will either support the complaint or bolster the defense." *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 398 (5th Cir. 1971); *GE Oil & Gas v. Waguespack*, 523 F. Supp. 3d 926, 940 (W.D. La. 2021).

"Second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." *Pulitzer-Polster*, 784 F.2d at 1309. Courts consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Pierce and Elaine are necessary parties because "[their] presence is critical to the disposition of the important issues in the litigation." *Haas*, 442 F.2d at 398. Cook's claims relate to Pierce's duties as co-trustee of Peroxisome, ROA.9545 (¶ 25), and Preston's defenses turn on Pierce's and Elaine's conduct. *See* ROA.3633-3655 (discussing comparative fault defense). Evidence from Pierce and Elaine regarding their contribution to damages to Heritage and Legacy would support Preston's comparative fault arguments set out below in Part III.A.

While Preston sought this evidence from Pierce and Elaine, the court prohibited Preston from deposing Elaine, ROA.9427 (Tr. 9:11-14), and prevented Preston from seeking "[a]ll documents relating to any agreement . . . involving" Elaine, Pierce, Preston, and/or Cook "to divide the Peroxisome Trust into two separate trusts." ROA.5515-5523; ROA.5528. Those documents are directly relevant to Preston's comparative-fault *arguments and would "either support the complaint or bolster the defense." Haas*, 442 F.2d at 398.

The four Rule 19(b) factors support finding Pierce and Elaine indispensable. Regarding the first, Pierce's absence prejudices Preston and Cook. As Peroxisome co-trustee, Pierce comparatively is at fault for failing to split Peroxisome or prevent or redress Preston's breaches. *See* La. R.S. § 9:2205(5); *infra* Part III.A. If Preston were to sue Pierce for those failures, Pierce could assert issue preclusion from the court's erroneous comparative fault ruling in *Cook II*, thereby prejudicing

46

Preston.  Accordingly, Pierce should have been joined as co-trustee of Peroxisome given his role in blocking the split that would have obviated damages.

Further, any judgment Cook obtains against Preston "could be reduced in proportion to the percentage of any fault allocated to [Pierce], under the principles of comparative fault." *Neal v. Old Republic Insurance*, 2020 WL 9720239, at *7 (W.D. La. 2020), *report and recommendation adopted*, 2020 WL 1164817 (W.D. La. 2020).  If the jury were to find Pierce comparatively at fault for refusing to split Peroxisome, or Pierce or Elaine at fault for failing to work with Preston, then Preston could be responsible for none or only a small portion of the damages.  *See* La. Civ. Code art. 2323.

Pierce and Elaine likewise would be prejudiced by their absence.  If this Court remands for a comparative-fault determination and the jury finds Pierce or Elaine at fault, that finding could be used against them in future litigation.  And as co-trustees of Heritage, Pierce and Elaine have special interests in protecting Peroxisome and Heritage.  To avoid impairing those interests and prejudicing themselves, Pierce's and Elaine's participation is required.  *See Waguespack*, 523 F. Supp. 3d at 938-40 (dismissing case for nonjoinder because "a judgment rendered in the absence of the [third parties] may, as a practical matter, impair or impede their ability to protect their interest in the subject matter"); *Halpern v. Jonathan Ferrara Gallery*, 365 So. 3d 568, 576 (La. App. 2020) (holding "the

failure to join the [third party] impedes its ability to protect its ownership interest in [the subject matter of the case]").

The second and third factors also weigh in favor of dismissal because the prejudice described cannot be "lessened or avoided," and any remedy would not be adequate. Fed. R. Civ. P. 19(b). Pierce, Elaine, or Preston will be prejudiced by the disposition of Preston's comparative fault arguments depending on how that issue is decided. If Pierce and Elaine are deemed not comparatively at fault, that ruling would prejudice Preston in future litigations. If they are deemed comparatively at fault, that ruling would prejudice Cook as an inadequate remedy because Cook could recover only the proportion of damages associated with Preston's comparative fault – if any. Because the district court permitted this lawsuit to proceed without indispensable parties – a gambit no doubt contrived to create diversity jurisdiction – the Court should find Rule 19(b) violated.

## III. A JURY SHOULD ASSESS COMPARATIVE FAULT AND FAILURE TO MITIGATE DAMAGES

If the Court does not order dismissal based on res judicata or nonjoinder, it should remand for Preston to present evidence at trial of comparative fault by Pierce and Elaine, and failure to mitigate damages by Cook.

### A. Pierce and Elaine Comparatively Are At Fault

In granting summary judgment on damages, the court erroneously precluded evidence showing Pierce and Elaine are at fault for Peroxisome's tax consequences

because (1) Pierce refused to divide Peroxisome even after he agreed to the split and a Louisiana court authorized it; and (2) Pierce and Elaine failed to seek an alternative resolution with Preston whereby Peroxisome could authorize distributions despite Pierce's refusal to divide Peroxisome.

"In any action for damages . . . the degree or percentage of fault of all persons causing or contributing to the injury . . . shall be determined . . . regardless of the basis of liability" and "regardless of whether the person is a . . . nonparty." La. Civ. Code art. 2323(A)-(B). No person shall "be liable for more than his degree of fault." *Id.* art. 2324(B). Failure to determine the percentage of fault of each party or nonparty actor is legal error. *See Hendrick v. ABC Insurance*, 760 So. 2d 650, 662 (La. App. 2000).

**1.** Pierce inexplicably blocked Peroxisome's division into two trusts so each could be operated by Pierce and Preston independently. ROA.7367; *supra* p.6. Preston consistently has stated he would authorize distributions from a split Peroxisome, ROA.231-235, but Pierce's blocking of the split makes him comparatively at fault.

In a 2013 Louisiana state-court petition, Elaine reported: "Elaine T. Marshall, Donor, E. Pierce Marshall, Jr. and Preston L. Marshall, Co-Trustees of the Peroxisome Trust, a Louisiana Trust, would like to transfer the entire corpus of the Peroxisome Trust" to two separate trusts. ROA.7347. Elaine represented that

Pierce and Preston each "ha[d] provided a written acceptance of the division of the Trust." ROA.7367. In granting Elaine's petition, the court ordered "the Peroxisome Trust is divided equally" into two separate trusts "upon execution and agreement of same by a majority of the Trustees." ROA.7370.

Despite receiving the judicial relief he had agreed upon, Pierce backtracked and refused to cooperate with Preston to effectuate the split. Had Pierce followed through, Preston would have had no say in a divided Peroxisome's distributions to Heritage and he would have allowed his half of a divided Peroxisome to make its distributions to Legacy – obviating the damages of which Cook complains here. Preston also filed a petition in 2017 to compel the split of Peroxisome in state court, ROA.9730-9740, which remains pending because Pierce delayed by seeking unsuccessfully to recuse the judge in that case.

Pierce's refusal contravened the purpose of splitting Peroxisome to allow Pierce and Preston "to administer their respective beneficial and charitable interests *independently* from one another." ROA.7348 (emphasis added). A jury should hear evidence of Pierce's bait-and-switch tactic followed by a decade of intransigence in determining how much Pierce comparatively is at fault. The district court erred in arrogating that jury function to itself.

**2.** Pierce and Elaine also are at fault for failing to seek any resolution with Preston to permit distributions despite Pierce's refusal to split Peroxisome. For

example, the district court found Preston's concern that tax liability could result from payments to Heritage and Legacy rather than the original Marshall Heritage Foundation presented a substantial question of law. ROA.1951; *supra* p.10. Pierce could have resolved this issue by amending Peroxisome's trust agreement to name Heritage and Legacy as proper recipients.

A trustee may be liable for a co-trustee's breach of trust by "[n]eglect[ing] to take proper steps to compel his co-trustee to redress a breach of trust." La. R.S. § 9:2205(5); *see also id.* §9:2114 (a trustee is not excused from "inactivity in the administration of the trust [or] for fail[ing] to attempt to prevent a breach of trust."). Louisiana places "the very highest possible fiduciary responsibility on the trustee towards the beneficiaries." *In re Succession of Dunham*, 408 So. 2d 888, 900-01 (La. 1981). Pierce failed to uphold that heightened responsibility: he did not seek any resolution with Preston to permit distributions despite Pierce's refusal to split Peroxisome, and testified he never even discussed with Preston why Preston ceased distributions. ROA.7005 (Tr. 27:16-18). A reasonable jury could find Pierce culpable for such inaction. *See* La. R.S. § 9:2205(5); *In re Mueller's Tr.*, 135 N.W.2d 854, 865 (Wis. 1965) (co-trustee liable where she "made no inquiries of [the other trustee] regarding trust affairs"; "[h]aving assumed the position of trustee, she was bound to perform the duties required of her, and cannot

escape liability merely because she relied entirely on the co-trustee to actually run the show").

Likewise, Elaine – having filed the petition to split Peroxisome and represented Pierce's agreement, and as trustee of Heritage and Legacy with a duty to prevent damage to those trusts – failed to persuade Pierce to follow through on his agreement to split Peroxisome that she had reported to the Louisiana court.

The district court failed to analyze whether Pierce or Elaine were at fault for those actions, instead conflating Preston's comparative-fault argument as one that *Cook* failed to mitigate damages, holding: "That Pierce, not a party to this suit, refused to agree with Preston's proposed course of action for the Peroxisome Trust more than ten years ago is not a basis for mitigation of damages by Dr. Cook following Preston's established breaches of fiduciary duty." ROA.8583. That conflation was legal error because the trier of fact must determine the "percentage of fault of all persons . . . contributing to an injury," whether those persons are unidentified *non-parties*, statutorily immune employers, or others. *Tisdale v. Hedrick*, 359 So. 3d 484, 489-90 (La. 2023); *see also Dumas v. Louisiana ex rel. Dep't of Culture, Recreation & Tourism*, 828 So. 2d 530, 537 (La. 2002) (holding Article 2323 "clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, *whether or not they are parties*, regardless of the legal theory of liability asserted against each person") (emphasis added).

This Court should remand to allow the jury to allocate fault appropriately. [16]

## B.     Cook Failed To Mitigate Damages

Cook failed to mitigate damages by failing (1) to persuade Pierce to complete the court-authorized split of Peroxisome; or (2) to seek damages against Preston in *Cook I* or any relief at all on behalf of Legacy until 2021, some 4.5 years after filing *Cook II* and more than five years after Preston ceased distributions.

Where "an obligee neglects to mitigate his damages his recovery must be reduced according to the extent both of his negligence and of its consequences." La. Civ. Code art. 2002 rev. cmt. b.  "In mitigating damages, an injured party should exercise the degree of care such as would be taken by an ordinarily prudent individual under the same or similar circumstances." *Merlin v. Fuselier Constr.*, 789 So. 2d 710, 716 (La. App. 2001).  Whether an injured person has mitigated damages "is squarely in the jury's province." *Bordelon v. Southern Cent. Bell Tel.*, 617 So. 2d 1337, 1342 (La. App. 1993).

---

[16] Cook argued below that Article 2323 does not apply because "the damages are . . . not a result of a 'tort' committed by Preston that would give rise to a comparative fault defense."  ROA.8451.  But the text of Article 2323 makes clear it "shall apply to any claim for recovery of damages . . . under any law or legal doctrine or theory of liability."  *Id.*  Louisiana courts thus have invoked Article 2323 in actions involving fiduciary relationships, *Ward v. Vizzini*, 695 So. 2d 1012, 1018 (La. App. 1997), and in any event have treated such claims as a "tort for breach of fiduciary duty," *Brown v. Schreiner*, 81 So. 3d 705, 708 (La. App. 2011).

*First*, Cook knew Preston would authorize distributions when Pierce agreed to divide Peroxisome, ROA.231-235, yet Cook took no apparent action to convince Pierce to split Peroxisome even as tax liabilities were mounting.  Cook's failure should be viewed considering his heightened fiduciary responsibility owed to Heritage and Legacy.  *See Succession of Dunham*, 408 So. 2d at 900-01.  Louisiana law required Cook to "preserve the trust property."  La. R.S. § 9:2091.  A reasonable trustee in Cook's position would have acted to protect Heritage and Legacy by at least *attempting* to get Pierce to divide Peroxisome.  Instead, Cook, Pierce, and Elaine strategically colluded to sue Preston rather than have Pierce immediately and easily solve the problem by implementing his agreement to split Peroxisome shortly after the December 2013 state-court authorization.  Cook then chose to withhold his *Cook II* claims from *Cook I*, burdening the court system and Preston with needlessly repetitive litigation.

*Second*, Cook failed to mitigate damages by unreasonably waiting to assert any claim for damages until 2021.  Cook alleged Heritage and Legacy had suffered damages before he filed *Cook I* yet he disclaimed damages in that first suit.  A reasonable jury could find those omissions failed to mitigate damages.  *See Rondeno v. Law Office*, 111 So. 3d 515, 518 (La. App. 2013) (plaintiff failed to mitigate damages by filing and then voluntarily dismissing suit against attorney accused of malpractice).

*Third*, Cook failed to mitigate damages by not promptly seeking permission for the clerk of court to sign disbursement authorizations. If Cook had sought such alternative relief when he first discovered Preston's non-authorizations instead of waiting until 2019 to do so, ROA.1861-1865, that may have saved millions in tax liability. A jury reasonably could find Cook chose to increase damages only to sue Preston to recover them. *See* La. R.S. § 9:2205(5); *Mueller's Tr.*, 135 N.W.2d at 865.

In dismissing Preston's mitigation arguments, the district court reasoned: "While Dr. Cook could have sought enforcement sooner, so too could Preston have complied sooner." ROA.8584. But Preston's perceived fault does not preclude a finding that Cook likewise failed to mitigate damages. *See* La. Civ. Code art. 2002. Instead, the relevant inquiry is whether, when Preston ceased distributions, Cook's decision to disclaim damages for Heritage and seek no relief for Legacy was reasonable (viewed as fiduciary to both trusts). *See MB Industries v. CNA Insurance*, 74 So. 3d 1173, 1181 (La. 2011) (mitigation assesses "facts known to [plaintiff] at the time and avoiding the temptation to view the case through hindsight"); *Unverzagt v. Young Builders*, 215 So. 2d 823, 826 (La. 1968) (whether plaintiff acted reasonably to mitigate damages should be considered at the time of defendant's conduct giving rise to the suit, "not when viewed in hindsight and predicated on the evidence adduced at the trial").

Again, the district court arrogated to itself the role of trier of fact, and remand is warranted for a jury to assess Cook's failure to mitigate damages.

## CONCLUSION

The Court should require dismissal either because Cook's claims are precluded by res judicata or because Pierce and/or Elaine are necessary and indispensable parties whose joinder would destroy diversity jurisdiction. Alternatively, the Court should remand for trial on damages where Preston may present evidence of comparative fault and failure to mitigate damages.

Dated: July 10, 2024

Respectfully submitted,

*/s/ David C. Frederick*
David C. Frederick
Scott K. Attaway
Catherine M. Redlingshafer
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dfrederick@kellogghansen.com
sattaway@kellogghansen.com
credlingshafer@kellogghansen.com

James M. Garner
Ashley G. Coker
SHER GARNER CAHILL RICHTER
   KLEIN & HILBERT, LLC
909 Poydras Street, 27th Floor
New Orleans, Louisiana 70112
Phone: (504) 299-2100
jgarner@shergarner.com
acoker@shergarner.com

*Counsel for Appellant Preston L. Marshall,*
*as Co-Trustee of Peroxisome Trust and in his personal capacity*

**CERTIFICATE OF SERVICE**

I certify that, on July 10, 2024, the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which suffices as notice to all counsel of record.

*/s/ David C. Frederick*
David C. Frederick

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,988 words, as determined by the word-count function of Microsoft Office Word 2016, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14 point, Times New Roman.

Dated: July 10, 2024                    */s/ David C. Frederick*
                                        David C. Frederick

# ADDENDUM

# TABLE OF CONTENTS

Page

La. Civ. Code:

    art. 2002 ...........................................................................Add.1

    art. 2323 ...........................................................................Add.2

    art. 2324 ...........................................................................Add.3

    art. 3492 ...........................................................................Add.4

La. Code Civ. Proc. art. 425.............................................................Add.5

La. Rev. Stat.:

    § 2091 ...............................................................................Add.6

    § 2201 ...............................................................................Add.7

    § 2205 ...............................................................................Add.8

    § 2114 ...............................................................................Add.9

    § 2221 .............................................................................Add.10

    § 5604 .............................................................................Add.11

    § 5605 .............................................................................Add.13

    § 5606 .............................................................................Add.14

    § 5628 .............................................................................Add.15

    § 13:4231 .........................................................................Add.16

i

**La. Civ. Code art. 2002.**
**Reasonable efforts to mitigate damages**

An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.

# La. Civ. Code art. 2323.
## Comparative fault

A.      In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B.      The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C.      Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

## La. Civ. Code art. 2324.
## Liability as solidary or joint and divisible obligation

A.     He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

B.     If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

C.     Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

## La. Civ. Code art. 3492.
### Delictual actions

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

## La. Code Civ. Proc. art. 425.
## Preclusion by judgment

A.     A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.

B.     Paragraph A of this Article shall not apply to an action for divorce under Civil Code Article 102 or 103, an action for determination of incidental matters under Civil Code Article 105, an action for contributions to a spouse's education or training under Civil Code Article 121, and an action for partition of community property and settlement of claims between spouses under R.S. 9:2801.

**La. Rev. Stat. § 2091.**
**Control and preservation of trust property**

A trustee is under a duty to a beneficiary to take reasonable steps to take, keep control of, and preserve the trust property.

## La. Rev. Stat. § 2201.
## General rule

If a trustee commits a breach of trust he shall be chargeable with:

(1)   A loss or depreciation in value of the trust estate resulting from a breach of trust; or

(2)   A profit made by him through breach of trust; or

(3)   A profit that would have accrued to the trust estate if there had been no breach of trust.

## La. Rev. Stat. § 2205.
## Liability of co-trustee

A trustee shall not be liable to a beneficiary for a breach of trust committed by a co-trustee, unless he:

(1)     Participates in a breach of trust committed by his co-trustee;

(2)     Delegates improperly the administration of the trust to his co-trustee;

(3)     Conceals, approves, or acquiesces in a breach of trust committed by his co-trustee;

(4)     Enables his co-trustee to commit a breach of trust by his failure to exercise reasonable care in the administration of the trust; or

(5)     Neglects to take proper steps to compel his co-trustee to redress a breach of trust.

## La. Rev. Stat. § 2114.
## Three or more trustees; exercise of powers

A power vested in three or more trustees may be exercised by a majority of the trustees, unless the trust instrument provides otherwise. A trustee who has not joined in exercising a power shall not be liable to the beneficiaries or to others for the consequences of that exercise, nor shall a dissenting trustee be liable for the consequences of an act in which he joins at the direction of the majority of trustees, if he expresses his dissent in writing to his co-trustees at or before the time of the joinder. Nothing in this section shall excuse a co-trustee from liability for inactivity in the administration of the trust nor for failure to attempt to prevent a breach of trust.

**La. Rev. Stat. § 2221.**
**Remedies against trustee**

A beneficiary of a trust may institute an action:

(1)     To compel a trustee to perform his duties as trustee;

(2)     To enjoin a trustee from committing a breach of trust;

(3)     To compel a trustee to redress a breach of trust;

(4)     To remove a trustee.

# La. Rev. Stat. § 5604.
## Actions for professional accounting liability

A.     No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B.     The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C.     Notwithstanding any other law to the contrary, in all actions brought in this state against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based on tort or breach of contract or otherwise arising out of an engagement to provide professional accounting service, the prescriptive and peremptive period shall be governed exclusively by this Section and the scope of the accountant's duty to clients and nonclients shall be determined exclusively by applicable Louisiana rules of law, regardless of the domicile of the parties involved.

D.     The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

E.     The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

F.     The peremptive periods provided in Subsections A and B of this Section shall not apply to any proceedings initiated by the State Board of Certified Public Accountants of Louisiana.

# La. Rev. Stat. § 5605.
# Actions for legal malpractice

A.     No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B.     The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C.     Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.

D.     The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

E.     The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

# La. Rev. Stat. § 5606.
## Actions for professional insurance agent liability

A.     No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B.     The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

C.     The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

D.     The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

# La. Rev. Stat. § 5628.
## Actions for medical malpractice

A.     No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

B.     The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

C.     The provisions of this Section shall apply to all healthcare providers listed herein or defined in R.S. 40:1231.1 regardless of whether the healthcare provider avails itself of the protections and provisions of R.S. 40:1231.1 et seq., by fulfilling the requirements necessary to qualify as listed in R.S. 40:1231.2 and 1231.4.

## La. Rev. Stat. § 13:4231.
## Res judicata

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1)    If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2)    If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3)    A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.