No. 24-30222

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STEPHEN D. COOK, DOCTOR; IN HIS CAPACITY AS CO-TRUSTEE OF MARSHALL
HERITAGE FOUNDATION,

*Plaintiff-Appellee,*

v.

PRESTON L. MARSHALL, IN HIS CAPACITY AS CO-TRUSTEE OF PEROXISOME TRUST,

*Defendant-Appellant.*

———————

STEPHEN D. COOK, DOCTOR; IN HIS CAPACITIES AS CO-TRUSTEE OF THE
MARSHALL HERITAGE FOUNDATION AND MARSHALL LEGACY FOUNDATION,

*Plaintiff-Appellee,*

v.

PRESTON L. MARSHALL, BOTH IN HIS OFFICIAL CAPACITY AS CO-TRUSTEE OF
PEROXISOME TRUST AND IN HIS PERSONAL CAPACITY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
Nos. 2:17-CV-5368, 2:21-CV-2139, Hon. Eldon E. Fallon

———————

## REPLY BRIEF FOR APPELLANT PRESTON L. MARSHALL

———————

James M. Garner
Ashley G. Coker
SHER GARNER CAHILL RICHTER
  KLEIN & HILBERT, LLC
909 Poydras Street, 27th Floor
New Orleans, Louisiana 70112
Phone: (504) 299-2100
jgarner@shergarner.com
acoker@shergarner.com

David C. Frederick
Scott K. Attaway
Catherine M. Redlingshafer
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dfrederick@kellogghansen.com
sattaway@kellogghansen.com
credlingshafer@kellogghansen.com

August 30, 2024    *Counsel for Appellant Preston L. Marshall*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................2

I.    RES JUDICATA BARS THIS SUIT ...........................................2

      A.    The Parties Are The Same Or Are In Privity (Element 3) ...................2

            1.    Cook as Co-Trustee of Heritage was the Same Plaintiff Each Time .........................................................2

            2.    Cook as Trustee of Legacy was in Privity with Himself as Trustee of Heritage .......................................2

            3.    For the Damages Claims, Preston in his Personal Capacity was in Privity with Himself as Co-Trustee of Peroxisome ........7

            4.    For the Trustee Removal Claim, Preston as Co-Trustee of Peroxisome was the Same Defendant Each Time ...................10

      B.    All Three *Cook II* Causes Of Action Existed At The Time Of Final Judgment In *Cook I* (Element 4) and Arose Out Of The Same Transaction (Element 5) ......................10

      C.    Cook's Judicial Estoppel Claims Are Erroneous ...............................12

II.   THE COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE CO-TRUSTEES OF HERITAGE AND LEGACY ARE CITIZENS OF THE SAME STATE AS PRESTON ....................13

      A.    A Trustee Party Has The Citizenship Of All Trustees For Purposes Of Diversity Jurisdiction ......................14

      B.    Allowing Trusts With Multiple Trustees To Manufacture Diversity Would Flout Supreme Court Precedent That Limits, Not Expands, Diversity Jurisdiction ....................17

III.    THIS SUIT SHOULD BE DISMISSED FOR FAILURE TO JOIN PIERCE AND ELAINE AS NECESSARY AND INDISPENSABLE PARTIES ................................................................................22

IV.    A JURY SHOULD ASSESS COMPARATIVE FAULT AND FAILURE TO MITIGATE DAMAGES ........................................24

    A.    Pierce and Elaine Comparatively Are At Fault...................24

    B.    Cook Failed to Mitigate Damages.......................................26

CONCLUSION ..................................................................................27

CERTIFICATE OF SERVICE ...........................................................29

CERTIFICATE OF COMPLIANCE ...................................................30

# TABLE OF AUTHORITIES

Page

## CASES

*Acton Co. v. Bachman Foods*,
668 F.2d 76 (1st Cir. 1982) .......................................................... 23

*Americold Realty Tr. v. Conagra Foods.*,
577 U.S. 378 (2016) ............................................................... 16, 18

*Arismendez v. Nightingale Home Health Care*,
493 F.3d 602 (5th Cir. 2007) ....................................................... 26

*Armbruster v. Partners, LLC*,
2018 WL 6069639 (E.D. La.) ......................................................... 5

*Austin v. Markey*,
2 So. 3d 438 (La. App. 2008) ......................................................... 2

*Bass v. International Bhd. of Boilermakers*,
630 F.2d 1058 (5th Cir. 1980) ............................................... 1, 14, 19

*Bonnafee v. Williams*,
44 U.S. (3 How.) 574 (1845) ......................................................... 15

*Breen v. Breen*,
370 So. 3d 1095 (La. App. 2023) ..................................................... 4

*Burguieres v. Pollingue*,
843 So. 2d 1049 (La. 2003) ......................................................... 3, 4

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990) ............................................................... 17, 19

*Chapman v. Barney*,
129 U.S. 677 (1889) ................................................................. 17

*Chappedelaine v. Dechenaux*,
8 U.S. (4 Cranch) 306 (1808) ....................................................... 15

*Coal Co. v. Blatchford*,
    78 U.S. (11 Wall.) 172 (1870) ........................................................ 15

*Colvin v. LeBlanc*,
    2 F.4th 494 (5th Cir. 2021) ........................................................... 13

*Cunard Line Ltd. v. Abney*,
    540 F. Supp. 657 (S.D.N.Y. 1982) ........................................... 19, 20

*Doermer v. Oxford Fin. Grp.*,
    884 F.3d 643 (7th Cir. 2018) ................................................... 20, 21

*Dumas v. Louisiana*,
    828 So. 2d 530 (La. 2002) ............................................................ 24

*EEOC v. Peabody Western Coal*,
    610 F.3d 1070 (9th Cir. 2010) ...................................................... 22

*Forum for Equality PAC v. McKeithen*,
    893 So. 2d 738 (La. 2005) ...................................................... 3, 5, 7

*Fugedi v. United Rentals*,
    2024 WL 1658249 (S.D. Tex.) ...................................................... 21

*GBForefront L.P. v. Forefront Mgmt. Grp.*,
    888 F.3d 29 (3d Cir. 2018) ........................................................... 20

*Great Southern Hotel v. Jones*,
    177 U.S. 449 (1900) ...................................................................... 17

*Haas v. Jefferson Nat'l Bank*,
    442 F.2d 394 (5th Cir. 1971) ........................................................ 22

*Harvey v. Dixie Graphics, Inc.*,
    593 So. 2d 351 (La. 1992) ............................................................ 11

*Harvey v. Grey Wolf Drilling Co.*,
    542 F.3d 1077 (5th Cir. 2008) ...................................................... 18

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ....................................................................... 20

*Home Insurance v. Matthews*,
    998 F.2d 305 (5th Cir. 1993) ........................................................................ 25

*Howery v. Allstate Insurance*,
    243 F.3d 912 (5th Cir. 2001) ............................................................... 14, 19

*Legate v. Livingston*,
    822 F.3d 207 (5th Cir. 2016) ........................................................................ 23

*Love v. Tyson Foods*,
    677 F.3d 258 (5th Cir. 2012) ........................................................................ 12

*Lubrizol Corp. v. Exxon Corp.*,
    871 F.2d 1279 (5th Cir. 1989) ........................................................................ 7

*Lucas v. United States*,
    807 F.2d 414 (5th Cir. 1986) ........................................................................ 26

*McCalmont v. McCalmont*,
    297 So. 3d 1057 (La. App. 2020) ...................................................................... 4

*Metropolitan Fair Housing Council v. Pelfrey*,
    292 F. Supp. 3d 1250 (W.D. Okla. 2017) ......................................................... 9

*Meyer v. Holley*,
    537 U.S. 280 (2003) ......................................................................................... 9

*Meza v. General Battery*,
    908 F.2d 1262 (5th Cir. 1990) ........................................................................ 4

*Momenian v. Davidson*,
    878 F.3d 381 (D.C. Cir. 2017) ....................................................................... 20

*Navarro Savings v. Lee*,
    446 U.S. 458 (1980) ......................................................... 15, 16, 18, 19

*New York Life Insurance v. Deshotel*,
    142 F.3d 873 (5th Cir. 1998) ......................................................................... 11

*Puerto Rico Med. Emergency Grp. v. Iglesia Episcopal Puertorriquena*,
    321 F.R.D. 475 (D.P.R. 2017) ........................................................................ 23

*Raymond Loubier Irrevocable Tr. v. Loubier*,
    858 F.3d 719 (2d Cir. 2017) .......................................................... 20

*Read v. United States*,
    169 F.3d 243 (5th Cir. 1999) ......................................................... 16

*Rogers v. McDorman*,
    521 F.3d 381 (5th Cir. 2008) ................................................... 25, 26

*Russell v. SunAmerica Securities*,
    962 F.2d 1169 (5th Cir. 1992) ................................................. 2, 6, 7

*Smyth, In re*,
    273 F.3d 393 (5th Cir. 2001) ....................................................... 7, 8

*Steelworkers v. R.H. Bouligny*,
    382 U.S. 145 (1965) ....................................................................... 18

*Strauss v. Patterson as Trustee*,
    469 F. Supp. 3d 1221 (D. Wyo. 2020) ........................................... 9

*Succession of Dunham, In re*,
    408 So. 2d 888 (La. 1981) ....................................................... 26, 27

*Syms v. Castleton Industries*,
    470 F.2d 1078 (5th Cir. 1972) ...................................................... 21

*Terrebonne Fuel v. Placid Refining*,
    666 So. 2d 624 (La. 1996) .............................................................. 1

*Thomas v. Board of Trustees*,
    195 U.S. 207 (1904) ....................................................................... 14

*Unverzagt v. Young Builders*,
    215 So. 2d 823 (La. 1968) ............................................................. 27

*Wagoner v. Chevron USA*,
    121 So. 3d 727 (La. App. 2013) ...................................................... 4

*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999) ........................................................ 25

**STATUTES**

28 U.S.C.:

§ 1332(c) ................................................................................... 17, 27

§ 1332(d)(10) ................................................................................ 18

§ 1359 ........................................................................................... 21

La. Civ. Code:

art. 2323 ................................................................................... 22, 24

art. 2323(A) .................................................................................. 24

La. Rev. Stat.:

§ 9:1731 ........................................................................................ 16

§ 9:2091 ........................................................................................ 27

§ 9:2126(D) ..................................................................................... 8

§ 9:2201(1) ...................................................................................... 8

§ 13:4231 ......................................................................................... 1

**RULES**

Fed. R. Civ. P.:

Rule 19 ............................................................... 1, 13, 22, 28

Rule 19(b) .................................................................................... 23

**OTHER AUTHORITY**

Restatement (Third) of Trusts (2012) ....................................................... 8

**INTRODUCTION**

The Court should dismiss this case as res judicata. Cook strategically declined in *Cook I* to bring accrued claims to (1) sue on behalf of Legacy, (2) seek damages from Preston, or (3) seek removal of Preston as Peroxisome co-trustee. *Cook II* thus flouts res judicata's "purpose of judicial economy and fairness" that "requir[ed] [Cook] to seek all relief and to assert all rights which arise out of the same transaction or occurrence." *Terrebonne Fuel v. Placid Refining*, 666 So. 2d 624, 632 (La. 1996) (quoting La. R.S. § 13:4231 cmt. (a)). Cook's unpersuasive challenges disregard pertinent or controlling decisions on privity and claim accrual.

The Court likewise should dismiss for lack of subject-matter jurisdiction, based on a previously unidentified defect. As this Court has concluded, "[t]he citizenship of unincorporated associations for diversity purposes is that of *each of its trustees*." *Bass v. International Bhd. of Boilermakers*, 630 F.2d 1058, 1067 n.17 (5th Cir. 1980) (emphasis added). Cook should not be allowed to manufacture diversity by excluding his non-diverse co-trustees who share the same powers.

Dismissal likewise is warranted under Rule 19 due to Cook's failure to join his non-diverse co-trustees as indispensable parties. Alternatively, if the Court does not dismiss for one of the three prior reasons, it should remand for a jury to assess comparative fault and failure to mitigate damages.

1

## ARGUMENT

## I. RES JUDICATA BARS THIS SUIT

Res judicata is proper because the parties in *Cook I* and *II* are the same or in privity, the causes of action existed before final judgment in *Cook I* (indeed, before the complaint), and they arise from the same transaction or occurrence.

### A. The Parties Are The Same Or Are In Privity (Element 3)[1]

#### 1. Cook as Co-Trustee of Heritage was the Same Plaintiff Each Time

Cook does not seriously dispute that, as co-trustee of Heritage, he was the same plaintiff in *Cook I* and *II*. *See* Br. 18-19; Opp. 24 & n.15.[2]  A party cannot "defeat [the] exception of res judicata by the naming of additional defendants" or plaintiffs. *Austin v. Markey*, 2 So. 3d 438, 441 (La. App. 2008).  The Court should hold Cook, as co-trustee of Heritage, is the same plaintiff in each case.

#### 2. Cook as Trustee of Legacy was in Privity with Himself as Trustee of Heritage

"[P]arties which are sufficiently related to merit the application of claim preclusion are in privity." *Russell v. SunAmerica Securities*, 962 F.2d 1169, 1174 (5th Cir. 1992).  A sufficient relationship is established when "the nonparty

---

[1] Cook's opposition combines the various party capacities into one discussion that pivots back and forth or commingles capacities.  This reply follows the opening brief approach of analyzing each distinct capacity separately.

[2] "Br." refers to Preston's opening brief.  "Opp." refers to Cook's opposition. All other terms used herein are as defined in Preston's opening brief.

controlled the prior litigation" or "the nonparty's interests were adequately represented by a party to the action who may be considered the 'virtual representative' of the nonparty because the interests of the party and the nonparty are so closely aligned." *Forum for Equality PAC v. McKeithen*, 893 So. 2d 738, 745 (La. 2005); *see* Br. 20.

Cook controlled the *Cook I* litigation, and he alleged Preston's cessation of distributions from Peroxisome harmed Legacy no less than Heritage because each trust was to receive distributions "equally" from Peroxisome. ROA.47 (¶¶ 12-13); *see* Br. 6-9, 11-12, 20-21. Likewise, Cook virtually represented Legacy because the equal-distribution interests of both trusts were "closely aligned." *Equality PAC*, 893 So. 2d at 745; *see* Br. 21-22. Cook and Elaine appointed Cook to sue on behalf of Heritage and Legacy, and as co-trustees of each trust they had similar legal duties and trustee incentives to represent them equally. Br. 12, 21-23.

**a.** Cook (at 22-23) disputes privity because formally he "appear[ed] in different capacities" in *Cook I* and *Cook II*, citing *Burguieres v. Pollingue*, 843 So. 2d 1049 (La. 2003). But that decision made clear "[i]dentity of parties can *also* be satisfied when a privy of one of the parties is involved," yet found on its facts "privity . . . is *not* implicated in the instant case and *we need not address it* at this time." *Id.* at 1054 n.3 (emphases added). The *Burguieres* plaintiffs' father was incapacitated by an auto accident and later died; the defendant served as

trustee and curator *before* his death and executrix *after* his death. *See id.* at 1050 & n.1. The court distinguished those capacities as concerning different conduct: "Because the second suit concerns Mrs. Pollingue's actions prior to William Sr.'s death, it follows that the second suit does not implicate her in her capacity as executrix of his succession." *Id.* at 1055. Here, by contrast, Cook challenges the *same conduct* – Preston's cessation of equal distributions to Heritage and Legacy – that affected the trusts equally.

Cook (at 23) cites *Wagoner v. Chevron USA*, 121 So. 3d 727 (La. App. 2013), in which the plaintiffs initially lacked rights to sue for damages "inflicted before acquisition of the property." *Id.* at 730. The court allowed a second suit only because "they did not obtain the [necessary] rights . . . until after the final judgment in [the first suit]." *Id.* at 735. But here Cook could have sued for harms to Legacy based on the same equal cessation of Peroxisome distributions.[3]

---

[3] The other cases cited (at 25-27) by Cook likewise fail to support his no-privity claim. *See Breen v. Breen*, 370 So. 3d 1095, 1102 (La. App. 2023) (plaintiff in second suit was denied intervention in first suit so he could not have controlled that litigation and was not in privity with half-siblings based on virtual representation); *Meza v. General Battery*, 908 F.2d 1262, 1272-73 (5th Cir. 1990) (finding no "virtual representation" where plaintiff "was not a member of the [Union] when [it] brought its suit," did not "consent[] to the Union's representation," and the Union had no "contractual [or statutory] duty to provide such representation"); *McCalmont v. McCalmont*, 297 So. 3d 1057, 1066 (La. App. 2020) (brother and sister sued seriatim by their father for accessing his phone data were not in privity).

**b.**  The on-point privity cases – which Cook fails to mention, let alone refute – are *Equality PAC*, the *Armbruster* decisions, and cases finding companies and managers in privity.  *See* Br. 22-23 & n.7.  In *Equality PAC*, decided two years after *Burguieres*, the Louisiana Supreme Court held voters challenging an election were precluded by a previous case brought by unrelated voters, reasoning their interests were "closely aligned" and virtually or "adequately represented" by voters in the first case.  893 So. 2d at 745.  Cook likewise virtually represented Legacy's interests in *Cook I*.  Moreover, unlike the second set of voters in *Equality PAC*, Cook controlled the *Cook I* litigation, making this a stronger case for privity.

Similarly, in the *Armbruster* cases (*see* Br. 22-23), courts found "an entity completely owned and controlled by Armbruster and his wife . . . had every motivation to advance Armbruster's interests as his 'virtual representative.'" *Armbruster v. Partners, LLC*, 2018 WL 6069639, at *9 (E.D. La.).  Cook likewise had "every motivation to advance [Legacy's] interests" in *Cook I.  Id.*; *see* Br. 22-23 & n.7.  Indeed, his summary-judgment brief in *Cook I* mentioned Legacy 33 times even as he claimed Legacy was "not involved in this suit."  ROA.1048; *see* Br. 9.  Cook's failure to sue then does not merit a second chance now.

**c.**  Finally, Cook (at 25) disputes privity because in *Cook I* he was authorized to represent Heritage but not Legacy, and only for declaratory relief but not damages.  But there is no requirement the nonparty be formally authorized to

sue in the first case, as made clear by *Equality PAC* (separate sets of voters held in privity) and the *Armbruster* cases (individuals and their companies held in privity). Indeed, the privity concept exists to identify relationships where a nonparty was *not* formally authorized and did *not* appear in the first suit, yet is barred for not doing so to further judicial economy and avoid vexatious lawsuits like *Cook II*.  Br. 19-23.  Cook had equivalent fiduciary duties to Heritage and Legacy, and his failure to sue on behalf of Legacy precludes him from doing so now.

Nor does it matter that Heritage and Legacy "have different trust instruments, different sets of trustees and different beneficiaries, sharing only a funding source (Peroxisome Trust)."  Opp. 25.  As Cook necessarily admits – by noting the shared Peroxisome funding source – they had identical interests to get their equal distributions from Peroxisome restored.  Such *identical* interests more than satisfy the rule that "parties which are *sufficiently related* to merit the application of claim preclusion are in privity."  *Russell*, 962 F.2d at 1174 (emphasis added).  Moreover, Cook and Elaine formed a majority of trustees and authorized Cook to sue on behalf of both trusts.  *See* Br. 7, 12.

The Court should hold Cook was in privity with himself as co-trustee of Heritage and Legacy.

### 3. For the Damages Claims, Preston in his Personal Capacity was in Privity with Himself as Co-Trustee of Peroxisome

Because Preston potentially was liable personally for damages in *Cook I*, he was "sufficiently related" to himself as co-trustee of Peroxisome, "controlled the prior litigation" for his defense, and served as his own "virtual representative." *Equality PAC*, 893 So. 2d at 745; *see* Br. 23-28.

**a.** Cook fails to address, let alone refute, the primary authorities cited by Preston holding relationships such as vicarious liability, principal and agent, or employer and employee each establish privity between different defendants such that a second suit is precluded. Those relationships are analogous to Preston's vicarious-liability relationship between himself personally and as co-trustee of Peroxisome. *See Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288-89 (5th Cir. 1989) ("employer-employee or principal-agent relationships may ground a claim preclusion defense" based on a "'special relationship' between the defendants in each action, if not complete identity of parties"); *Russell*, 962 F.2d at 1171, 1174-76 (similar, surveying extensive case law); Br. 25-26 & n.9. The inquiry is fact-based, and here the facts are undisputed Cook had the relevant power in both trusts to bring the *Cook II* claims in *Cook I.*

In *In re Smyth*, this Court held a second suit against a bankruptcy trustee in his capacity as trust accountant was precluded because the first suit had challenged the trustee's accounting conduct. 273 F.3d 393 (5th Cir. 2001), 2001 WL

1013183, at *2. Cook says (at 28) "the trustee had in fact appeared in his capacity as an accountant in the first suit," but ignores the Court's statement that, "given [Defendant's] presence in the proceeding as trustee, our precedent does not require that he also had to be present explicitly in his capacity as accountant." *Id.* at *2 n.5. This Court in *Smyth* cited *Russell* for the principle "strict identity of the parties is not necessary"; and because the first suit had challenged the trustee's *conduct* as the estate accountant, this Court held "claim preclusion is more than amply justified." *Id.* Similarly, *Cook I* challenged Preston's *conduct* in ceasing Peroxisome distributions, and *Cook II* challenges the same conduct but seeks a different remedy – damages from Preston in his personal capacity that Cook could have sought in *Cook I* yet failed to do so.

**b.** Cook erroneously claims (at 28 n.19) "[t]here is no support for vicarious liability of a trustee," but his damages theory is that Preston is liable for his conduct as a trustee, which is vicarious liability. *Compare* ROA.9555 (¶ 61) (*Cook II* complaint citing § 9:2201(1), which provides a trustee may be personally liable for "loss or depreciation in value of the trust estate resulting from a breach of trust"; § 9:2126(D), which provides "[a] trustee may also be held personally liable for any tort committed by him"); *and* Restatement (Third) of Trusts § 100 (2012) ("[a] trustee who commits a breach of trust is chargeable with . . . the amount required to restore the values of the trust estate and trust distributions") *with Meyer*

8

*v. Holley*, 537 U.S. 280, 285 (2003) ("traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment").

Many cases address vicarious liability of a trustee for acts of *third parties* deemed an agent or employee. *See*, *e.g.*, *Metropolitan Fair Housing Council v. Pelfrey*, 292 F. Supp. 3d 1250, 1254 (W.D. Okla. 2017) (trustee was "vicariously liable" for agent's housing discrimination); *Strauss v. Patterson*, 469 F. Supp. 3d 1221, 1232 (D. Wyo. 2020) ("By allowing trustees to be sued in their representative capacity for tort liabilities incurred to third parties during a trustee's control of trust property, the law indicates that trusts can be vicariously liable for control of that trust property."). It should not be different when the trustee and liable person are the same human.

Thus, multiple cases have held a trustee is in privity with himself. Br. 27. Cook seeks (at 28-29) to distinguish one of them because the trustee also was a beneficiary. But what matters is whether the trustee is liable personally for his actions taken as a trustee, making beneficiary status irrelevant. In any case, Preston *is* a beneficiary – Cook himself says (at 4 & n.2) Peroxisome began with principal of $100,000,000 and Preston is a "remainder beneficiar[y]" entitled to "half of the remainder interest."

The Court should hold Preston as co-trustee is in privity with himself.

### 4. For the Trustee Removal Claim, Preston as Co-Trustee of Peroxisome was the Same Defendant Each Time

Cook does not dispute that, for the trustee removal claim, Preston as co-trustee of Peroxisome was the same defendant each time. *See* Br. 29. The Court should hold the identity-of-parties element satisfied for the trustee removal claim.

### B. All Three *Cook II* Causes Of Action Existed At The Time Of Final Judgment In *Cook I* (Element 4) and Arose Out Of The Same Transaction (Element 5)

It is beyond reasonable dispute that the damages claimed in *Cook II* arose from the same distribution-cessation conduct challenged in *Cook I*. The *Cook I* complaint alleged in May 2017 that Heritage had suffered $1.6 million in damages; Cook's April 2018 summary-judgment motion asserted damages had doubled to more than $3.3 million; both submissions asserted Peroxisome had incurred significant tax liabilities for failing to make distributions to Heritage and Legacy; and those amounts would only have grown by the February 2019 final judgment. Br. 29-31. Cook also had grounds to seek Preston's removal from Peroxisome, as asserted in his April 2018 summary-judgment motion. *Id.* at 39-40.

Louisiana law makes clear the damages and removal claims accrued well before the *Cook I* complaint and certainly by final judgment. "The cause of action arises . . . *before* the plaintiff sustains *all or even the greater part* of the damage occasioned by the delict," so "[a]*ny actual and appreciable injury* flowing from the defendant's negligence or other wrongful act establishes a cause of action upon

which the plaintiff may sue, even though he may thereafter come to a more precise realization of the damages he has already incurred *or incur further damage* as a result of the tortious act." *New York Life Insurance v. Deshotel*, 142 F.3d 873, 880 (5th Cir. 1998) (emphases added) (citing *Harvey v. Dixie Graphics*, 593 So. 2d 351, 354 (La. 1992) ("[T]here is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action.")); *see* Br. 31-40.

Cook errs in saying (at 32) he could wait until more damages were realized or became more certain in amount, including by IRS tax assessments. Cook was bound to bring his damages and removal claims in *Cook I* because substantial damages already had been suffered, even though more damages and their precise amounts would be established later in time. Br. 29-38. This Court should hold the damages and removal claims had accrued before final judgment in *Cook I* and were based on the same conduct by Preston of ceasing distributions from Peroxisome.[4]

---

[4] Even if the Court were to hold claims are not precluded to the extent based on Preston's continued cessation of Peroxisome distributions after the February 2019 final judgment, it would not justify affirming the $10.63 million damages award. Instead, remand would be necessary to apportion damages caused before final judgment that would be precluded, and damages caused by later conduct. As noted, by February 2019 the tax years of 2017 and 2018 were closed, and Cook knew Peroxisome was subject to tax liability for 2019 based on the same continued conduct, so at a minimum two-thirds of the damages would be precluded. Br. 30 & n.12. Further, the fact Cook knew and alleged additional tax liability would follow fully supports preclusion of damages based on 2019 taxes as well.

## C.  Cook's Judicial Estoppel Claims Are Erroneous

Judicial estoppel requires proof of "plainly inconsistent" positions that were not inadvertent, on which a court relied.  *Love v. Tyson Foods*, 677 F.3d 258, 261 (5th Cir. 2012).  No such proof exists here.

*First*, Cook erroneously challenges Preston's position for purposes of privity that his personal liability was at risk in *Cook I*.  Cook contends (at 27-28, 35-36) that position is inconsistent with Preston's previous arguments in *Cook I* and a state-court case that he was sued in *Cook I* only as co-trustee but not personally.  There is no contradiction.  Because Cook had the ability potentially to add damage claims until final judgment in *Cook I*, Preston's personal liability *was* potentially in play through final judgment.  Br. 16 & n.3.  At the appeal-bond stage in *Cook I*, the February 2019 final judgment did *not* hold Preston personally liable for damages, just as Preston correctly argued.  The same was true at the cited March 2019 state-court hearing.  In any case, Cook fails to show judicial reliance.  *See* Opp. 27 n.18 ("The district court denied [Cook's] motion for an appeal bond as moot."); *id.* at 36 (citing ROA.3200-3205, where state court merely noted *Cook I* was on appeal and judicial economy would not be served by taking the issue from the jury).

*Second*, Cook says (at 35-36) in a state-court suit he asserted *Cook I* was res judicata on whether Cook was a proper trustee of Legacy; and Preston countered res judicata could not apply because Cook did *not* sue as a trustee of Legacy, only

12

Heritage.  Cook now claims (at 36) Preston's opposition was "directly contrary to the argument he has made here" regarding privity.  But it plainly is true, as the state court held, "[Legacy] was not a party to the [*Cook I*] litigation."  Opp. 36 n.21 (quoting ROA.3184).  Nor did (or could) the *Cook I* court make *any* rulings about *nonparty* Legacy.  Consistent with that lack of rulings, Preston properly argued here that Cook should have sued on behalf of Legacy in *Cook I* if he sought any rulings about Legacy.  Cook's judicial estoppel claims thus lack merit.

## II. THE COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE CO-TRUSTEES OF HERITAGE AND LEGACY ARE CITIZENS OF THE SAME STATE AS PRESTON

Until now, Rule 19 was the sole asserted basis for lack of diversity jurisdiction based on the failure to join Elaine and Pierce as necessary and indispensable parties, who like Preston are citizens of Texas.  Br. 44-48.  But it now is clear the Court lacks subject-matter jurisdiction for a more fundamental, antecedent reason:  diversity jurisdiction requires *all* trustees – not merely the strategically named plaintiff trustee – to be completely diverse from all defendants.

The Court should consider this question now because "federal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal."  *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021).  "Federal courts are courts of limited jurisdiction . . . and the burden of establishing federal jurisdiction

rests on the party seeking the federal forum." *Howery v. Allstate Insurance*, 243 F.3d 912, 916 (5th Cir. 2001).

The Court should hold that *all* trustees – named and unnamed – must be completely diverse to all defendants, regardless of the plaintiff's creative pleading.

### A.    A Trustee Party Has The Citizenship Of All Trustees For Purposes Of Diversity Jurisdiction

**1.**  The Supreme Court never has allowed the citizenship of unnamed trustees to be disregarded to create diversity jurisdiction.  In *Thomas v. Board of Trustees*, 195 U.S. 207 (1904), a suit against a university board of trustees, the Court held diversity jurisdiction could be established *only* by an "allegation that *each individual trustee* was a citizen of [a diverse state]." *Id.* at 218 (emphasis added).  The Court nowhere suggested parties may pick and choose which trustee to sue and ignore the citizenship of nonparty, non-diverse trustees.

Decades later, this Court relied on *Thomas* to conclude "[t]he citizenship of unincorporated associations for diversity purposes is that of *each of its trustees*." *Bass v. International Bhd. of Boilermakers*, 630 F.2d 1058, 1067 n.17 (5th Cir. 1980) (emphasis added).  The Court held *sua sponte*:  "The record does not indicate the citizenship of the six trustees.  Therefore, complete diversity of citizenship has not been shown to exist and jurisdiction cannot rest on 28 U.S.C. § 1332." *Id.*

This Court should apply *Thomas* and *Bass*, and hold the citizenship of all three Heritage and Legacy trustees counts, diversity is lacking, and this case must be dismissed for lack of subject-matter jurisdiction.

**2.** In *Navarro Savings v. Lee*, 446 U.S. 458 (1980), the question was whether the trustee's citizenship was all that mattered for diversity, or if the citizenship of trust beneficiaries also counted. The Court held the citizenship of beneficiaries could be disregarded so long as the trustees were "active trustees" who have "legal title," "manage the assets," and may sue and be sued as trustees. *Id.* at 465; *see generally id.* at 462-66.

Those requirements were satisfied because the eight trustee plaintiffs jointly held "title to real estate investments in trust for the benefit of . . . shareholders." *Id.* at 459. "They have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy." *Id.* at 465.

*Navarro* and cases it relied on concerned multiples trustees; none allowed unnamed trustees to be disregarded. Using the plural form, the Court explained: "As early as 1808, this Court stated that *trustees* of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship." *Id.* at 462 (emphasis added) (citing *Chappedelaine v. Dechenaux*, 8 U.S. (4 Cranch) 306, 308 (1808); *Bonnafee v. Williams*, 44 U.S. (3 How.) 574, 577 (1845); *Coal Co. v. Blatchford*, 78 U.S. (11 Wall.) 172, 175 (1870)).

The Supreme Court later explained its *Navarro* rule as based on the history that "[t]raditionally, a trust was not considered a distinct legal entity, but a fiduciary relationship between multiple people," that "could [not] be haled into court" so "legal proceedings involving a trust were brought by or against the *trustees* in their own name." *Americold Realty Tr. v. Conagra Foods*, 577 U.S. 378, 383 (2016) (cleaned up; emphasis added).

**3.** Heritage and Legacy likewise are traditional trusts based on "the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another." La. R.S. § 9:1731; *see Read v. United States*, 169 F.3d 243, 248 (5th Cir. 1999) (in Louisiana, "title to trust property [is] vested in the trustee alone").

The linchpin of *Navarro*'s reasoning that beneficiaries could be excluded from the diversity calculus was that the eight trustee plaintiffs *together* held legal title to property, exclusively managed the assets free of shareholder control, and could sue and be sued. 446 U.S. at 459, 465. The trust instruments for Heritage and Legacy likewise provide that all three co-trustees *together* hold and manage trust property. ROA.9573-9594 (Article VIII for each lists "powers" of the "Co-Trustees"). To conclude Heritage and Legacy may nominate Cook to sue – and ignore the non-diverse citizenship of two unnamed trustees who jointly share the

*same powers* to hold and manage trust property – would be a radical departure from *Navarro*'s core logic, and the holdings of *Thomas* and *Bass.*

Cook could not even sue without majority trustee authorization, *see* La. R.S. § 9:2114, and those authorizations were made by the trustees unanimously for Heritage and by 2-1 majority for Legacy, *see* ROA.9560-9568.  Likewise, Cook says (at 38) Pierce and Elaine "authorized" Cook's filing of this suit, which they otherwise "would have" filed themselves.  In both Heritage and Legacy, Cook is the sole trustee diverse to Preston.  The other two trustees – Elaine and Pierce for Heritage, and Elaine and Preston for Legacy – are Texas citizens just like Preston.

### B. Allowing Trusts With Multiple Trustees To Manufacture Diversity Would Flout Supreme Court Precedent That Limits, Not Expands, Diversity Jurisdiction

**1.**  Corporations enjoy enhanced opportunities for diversity jurisdiction because Congress has specified they are citizens only of their state of incorporation and principal place of business.  28 U.S.C. § 1332(c).  Absent congressional action, the Supreme Court has held *unincorporated* associations are subject to an all-members rule, meaning they have the citizenship of *all* members.

Partnerships have the citizenship of all partners.  *Chapman v. Barney*, 129 U.S. 677, 682 (1889).  So does a "limited partnership association," *Great Southern Hotel v. Jones*, 177 U.S. 449, 456-57 (1900), where citizenship of all general and limited partners counts, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192-96 (1990).

17

Labor unions have the citizenship of all members. *Steelworkers v. R.H. Bouligny*, 382 U.S. 145, 151 (1965). So do LLCs. *Harvey v. Grey Wolf Drilling*, 542 F.3d 1077, 1080 (5th Cir. 2008).

A statutory trust suing or sued in the name of the trust likewise has the citizenship of all members including trust beneficiaries because, unlike a traditional trust, it is a juridical entity capable of suing and being sued. *Americold*, 577 U.S. at 382-83. In *Americold*, the Court noted the "'doctrinal wall' between corporate and unincorporated entities" and applied the all-members rule to a real-estate investment trust that state law deemed a juridical entity. *Id.* at 384.[5]

**2.** Traditional trusts are the sole non-statutory exception to the all-members rule. *Navarro* and its historical antecedents already increased opportunities for diversity jurisdiction by excluding beneficiaries because they do *not* hold legal title or manage trust assets. But *Navarro*'s logic must mean the citizenship of *all* trustees matters, because together they *do* hold legal title and manage trust assets.

The *Navarro* Court nowhere suggested trustee citizenship can be made irrelevant by declining to name non-diverse trustees as parties. It spoke of "trustees" in plural form, indicating they all count. *See* 446 U.S. at 458 ("The question is whether the *trustees* of a business trust may invoke the diversity

---

[5] Class actions are the sole statutory exception to the all-members rule for unincorporated associations. 28 U.S.C. § 1332(d)(10) (similar to corporations).

jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders.") (emphasis added); *id.* at 462, 465 (historically, "trustees" may sue and be sued). The Court explained that in *Thomas* it "held that jurisdiction depended upon the citizenship of the individual *trustees*." *Id.* at 463 n.11 (emphasis added). Accordingly, this Court correctly relied on *Thomas* to require "complete diversity of citizenship" by "each" trustee. *Bass*, 630 F.2d at 1067 n.17.

**3.** A rule that all trustees' citizenship matters is analogous to *Carden*'s rule that the citizenship of both general *and* limited partners applies. 494 U.S. at 192-96. But allowing trustees unilaterally to determine which trustee's citizenship counts by strategically excluding non-diverse trustees would allow rampant manufacture of diversity jurisdiction, at odds with the principle "[f]ederal courts are courts of limited jurisdiction." *Howery*, 243 F.3d at 916.

Here, Cook (a Louisiana citizen) sued Preston (a Texas citizen). But in the next case, Elaine or Pierce (both Texas citizens) could sideline Cook and sue a Louisiana defendant in federal court. If the next defendants are citizens of both Louisiana and Texas, the current trustees could appoint a new trustee from Mississippi to sue. Such artful pleading is outlawed for unincorporated associations. In *Cunard Line Ltd. v. Abney*, 540 F. Supp. 657, 662 (S.D.N.Y. 1982), for example, the court rejected "dropping a non-diverse partner" to create

diversity because a "partnership does not – like a jurisdictional chameleon – change the color of its citizenship to accommodate the choice of a federal forum by a non-diverse opponent." *Id.* at 664. The same should be true for trustees.

Allowing such trickery by trusts with multiple trustees likewise clashes with the rationale for diversity jurisdiction of "opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010). Here, Pierce and Elaine are trustees with powers equal to Cook's, and as Texas citizens they could not be subject to local prejudice by suing Preston, also a Texas citizen, in a state court.

**4.** The Third Circuit has reasoned in dicta that "where a traditional trust has multiple trustees, we consider it to have the citizenship of each of its trustees." *GBForefront L.P. v. Forefront Mgmt. Grp.*, 888 F.3d 29, 34 n.6 (3d Cir. 2018). Other cases regarding trusts with one trustee have said "citizenship of a traditional trust is the citizenship of its trustees." *Momenian v. Davidson*, 878 F.3d 381, 389 (D.C. Cir. 2017); *see Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) ("it is the trustees' citizenship that must determine diversity"); Br. 44 (citing these cases).

The Seventh Circuit, on the other hand, held unnamed trustees' citizenship can be ignored, but in a slimly reasoned opinion that did not consider the arguments presented here. *See Doermer v. Oxford Fin. Grp.*, 884 F.3d 643, 647

20

(7th Cir. 2018). That case erroneously relied on *Navarro* to hold unnamed trustees could be ignored, without considering that all eight trustees in *Navarro* were named plaintiffs. *Doermer* fundamentally conflicts with *Navarro*'s holding that trustees were proper parties precisely because they jointly owned and managed trust assets. By contrast, *Doermer* lets trustees jointly holding those same powers strategically decide which gets to be plaintiff and which remains a nonparty and thereby manufacture diversity. That approach lacks merit.

**5.** This suit likewise violates 28 U.S.C. § 1359, which precludes diversity jurisdiction when "any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Here, Cook, Elaine, and Pierce colluded to concoct diversity by excluding non-diverse co-trustees that share the same powers. *See Syms v. Castleton Industries*, 470 F.2d 1078, 1082, 1090 (5th Cir. 1972) (finding violation by "sham assignment" among trustees where each "retained" the same interests as before); *Fugedi v. United Rentals*, 2024 WL 1658249, at *5-10 (S.D. Tex.) (similar).

The Court should hold the citizenship of each trustee counts for diversity jurisdiction and dismiss this case.

## III. THIS SUIT SHOULD BE DISMISSED FOR FAILURE TO JOIN PIERCE AND ELAINE AS NECESSARY AND INDISPENSABLE PARTIES

If the Court does not dismiss for preceding reasons, it should dismiss under Rule 19.  Br. 44-48.

*First*, Pierce and Elaine are indispensable because their "presence is critical to the disposition of . . . important issues in th[is] litigation" and their evidence will "bolster [Preston's] defense."  *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 398 (5th Cir. 1971).  Specifically, Pierce's and Elaine's conduct is central to Preston's comparative-fault defense and the court's refusal to join them prejudiced Preston from fully developing that defense during discovery.  *See* Br. 46-48.

Cook erroneously contends (at 39) the district court could grant relief without joining Pierce or Elaine, but ignores that Preston was prevented from developing the record to reduce damages.  Cook's remedy would be inadequate because he could recover only the portion of damages associated with Preston's comparative fault (if any), not portions attributable to nonparties Pierce and Elaine. *See* La. Civ. Code art. 2323; *cf. EEOC v. Peabody Western Coal*, 610 F.3d 1070, 1082 (9th Cir. 2010) (finding indispensability where defendant "will not be able to seek indemnification from" third party).[6]

---

[6] Cook argues (at 39) that being potential joint tortfeasors does not make Pierce and Elaine "required parties."  But Preston is not arguing they should be joined

*Second*, the four Rule 19(b) factors support finding Pierce and Elaine indispensable. Cook (at 40-41) only addresses prejudice, arguing neither "would be prejudiced by a judgment in this action" because their interests are "aligned with and protected by Dr. Cook's authorized actions in this suit."[7] Cook's argument fails to address the prejudice Pierce and Elaine face in *future* litigations. A jury finding that Pierce and Elaine are at fault on remand could be used against them in other lawsuits. *See*, *e.g.*, *Acton Co. v. Bachman Foods*, 668 F.2d 76, 78-79 (1st Cir. 1982) (finding indispensability where "adverse ruling would be a persuasive precedent" and "weaken [nonparty's] bargaining position for settlement"); *Puerto Rico Med. Emergency Grp. v. Iglesia Episcopal Puertorriquena*, 321 F.R.D. 475, 480 (D.P.R. 2017) (finding indispensability where contract-breach finding "could potentially prejudice [nonparty] in future litigation").

The Court should hold the district court abused its discretion by refusing to join Pierce and Elaine and dismiss the case.

---

simply based on comparative fault. Instead, they should be joined due to the prejudice to Preston, Pierce, and Elaine, and inability to award adequate relief.

[7] Because Cook does not address Rule 19(b)'s other factors, those arguments are waived. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

## IV. A JURY SHOULD ASSESS COMPARATIVE FAULT AND FAILURE TO MITIGATE DAMAGES

Alternatively, the Court should remand for trial of Pierce's and Elaine's comparative fault and Cook's failure to mitigate damages.

### A. Pierce and Elaine Comparatively Are At Fault

**1.** The district court failed to determine the "percentage of fault of all persons causing or contributing to the injury." La. Civ. Code art. 2323(A); *see Dumas v. Louisiana*, 828 So. 2d 530, 537 (La. 2002) (Article 2323 "clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person."); Br. 48-53.

Pierce is at fault because, after agreeing to split Peroxisome in 2013 and getting court permission to do so, for 10 years he has blocked Peroxisome from dividing into two trusts. Cook notes the "state court only authorized the division 'upon execution and agreement of same by a majority of the Trustees.'" Opp. 44 (quoting ROA.94; ROA.1856). But he does not – and could not – deny that Elaine's petition to the state court represented that Pierce *already* "ha[d] provided a written acceptance of the division of the Trust." ROA.7367; *see* Br. 49-50.

A jury should hear this powerful evidence of obstruction by Pierce in reneging on his prior agreement to split Peroxisome, which would have enabled Preston and Pierce to authorize distributions from separate post-Peroxisome trusts

independently, thus avoiding any damages. Br. 49-50. The court erred in dismissing that genuine dispute of material fact as having occurred some "ten years ago," ROA.8583 (quoted at Opp. 43), when a reasonable jury could find Pierce's refusal has been an *ongoing* event that *continuously* has caused harm and makes him comparatively at fault even to 100%.

Pierce and Elaine likewise are culpable for failing to seek any resolution with Preston to permit distributions despite Pierce's refusal to split Peroxisome. Br. 50-53. For example, Pierce could have amended the Peroxisome trust agreements to name Heritage and Legacy as proper recipients.[8]

**2.** Cook asserts (at 42) "comparative fault was not pled as a defense," but Preston gave sufficient notice. Only "fair notice" is required, *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999), "sufficiently articulated" to avoid "unfair surprise," *Home Insurance v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993).

Preston's Answer pleaded "the alleged damages of [Heritage] and Legacy . . . were caused in whole or in part by the inactions, breaches, and failures of . . . Pierce . . . and Elaine," ROA.3635, plainly raising Pierce's and Elaine's comparative fault. In *Rogers v. McDorman*, 521 F.3d 381, 385-87 (5th Cir. 2008),

---

[8] Cook erroneously argues (at 46 n.28) that "this theory is new," and thus is waived. Preston argued that Pierce and Elaine were at fault in his opposition to Cook's motion for summary judgment. *See* ROA.7148-7155; ROA.7163-7164.

this Court held an *in-pari-delicto* defense was not waived where defendant's answer alleged "damages . . . were caused in whole or in part by the acts or omissions of [p]laintiffs," which "specifically raised [the plaintiffs'] conduct as an affirmative defense." *Id.* That principle applies here.

Even if not sufficiently pleaded, an affirmative defense may be raised "at a pragmatically sufficient time" so long as the plaintiff "was not prejudiced in its ability to respond." *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986). Cook contested the applicability of Preston's comparative-fault defense at summary judgment, ROA.7902-7903, and the district court addressed it on the merits without finding it waived. *See Rogers*, 521 F.3d at 387 (defense not waived when raised at a "pragmatically sufficient time . . . in a pretrial brief"); *Arismendez v. Nightingale Home Health Care*, 493 F.3d 602, 611 (5th Cir. 2007) (same, joint pretrial order). Nor was Cook prejudiced by any alleged delay. *See Rogers*, 521 F.3d at 386-87; *Arismendez*, 493 F.3d at 611.

## B. Cook Failed to Mitigate Damages

A reasonable jury could find Cook's inaction exacerbated Peroxisome's tax consequences. Cook concedes (at 48) he "did have a duty of mitigation."[9] Indeed, Cook owed Heritage and Legacy a heightened fiduciary duty, *see In re Succession*

---

[9] Cook's suggestion (at 45-48) that Preston's failure-to-mitigate arguments are directed as well at Elaine and Pierce is wrong. The arguments directed at Pierce and Elaine go to their comparative fault, not mitigation.

*of Dunham*, 408 So. 2d 888, 900-01 (La. 1981), and a reasonable trustee would have acted more vigorously to "preserve the trust property," La. R.S. § 9:2091. A reasonable jury could find Cook failed to mitigate damages by not even *attempting* to get Pierce to divide Peroxisome, and not seeking *any* relief on behalf of Legacy until more than five years after Peroxisome distributions ceased. Br. 53-56.

Cook erroneously contends (at 49) Preston's argument fails under *Unverzagt v. Young Builders*, 215 So. 2d 823 (La. 1968), "as clearly Preston had the ability to reduce the damages of the Foundations but refused to do so." In *Unverzagt*, experts provided conflicting opinions to a homeowner on how to fix a defective swimming pool. *Id.* at 827. The court rejected the defendant's claim the owner failed to mitigate damages by not following one of those opinions over the other, reasoning the "[p]laintiff, a layman in the field, was confronted . . . with conflicting expert opinions." *Id.* Here by contrast, Cook's inaction was not based on "conflicting expert opinions" and he was not "a layman in the field." *Id.* Instead, Cook is co-trustee of Heritage and Legacy with duties to act in their interests. *See* La. R.S. § 9:2091. A reasonable jury could determine he failed to do so.

## CONCLUSION

The Court should require dismissal based on res judicata, lack of diversity jurisdiction under 28 U.S.C. § 1332(c), or failure to join indispensable parties

under Rule 19.  Alternatively, the Court should remand for trial on damages where Preston may present evidence of comparative fault and failure to mitigate damages.

Dated: August 30, 2024

Respectfully submitted,

*/s/ David C. Frederick*
David C. Frederick
Scott K. Attaway
Catherine M. Redlingshafer
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dfrederick@kellogghansen.com
sattaway@kellogghansen.com
credlingshafer@kellogghansen.com

James M. Garner
Ashley G. Coker
SHER GARNER CAHILL RICHTER
   KLEIN & HILBERT, LLC
909 Poydras Street, 27th Floor
New Orleans, Louisiana 70112
Phone: (504) 299-2100
jgarner@shergarner.com
acoker@shergarner.com

*Counsel for Appellant Preston L. Marshall,*
*as Co-Trustee of Peroxisome Trust and in his personal capacity*

## CERTIFICATE OF SERVICE

I certify that, on August 30, 2024, the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which suffices as notice to all counsel of record.

/s/ David C. Frederick
David C. Frederick

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,496 words, as determined by the word-count function of Microsoft Office Word 2016, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14 point, Times New Roman.

Dated: August 30, 2024                    */s/ David C. Frederick*
                                          David C. Frederick